Derrick Anthony LEE, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 1:00CV1072.

United States District Court, M.D. North Carolina.

Sept. 7, 2001.

567

Derrick Anthony Lee, Greensboro, NC, pro se.

James A. Dickens, Greensboro, NC, for Plaintiff.

John W. Stone, Office of the U.S. Attorney, Greensboro, NC, for United States.

## MEMORANDUM OPINION

BEATY, District Judge.

This matter comes before the Court on Defendant United States of America's Motion to Dismiss, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, and in the alternative, for Summary Judgment, pursuant to Rule 56 [Document # 3]. This matter is also before the Court on Plaintiff Derrick Anthony Lee's Motion to Remand this matter to the Superior Court of Guilford County, North Carolina [Document # 8]. For the reasons that follow, Plaintiff's Motion to Remand is DENIED. Furthermore, Defendant's Motion to Dismiss is GRANTED, thus rendering Defendant's alternative Motion for Summary Judgment moot.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This action arises out of an alleged assault on Derrick Anthony Lee ("Plaintiff"). According to Plaintiff, his supervisor, Paul Stokes ("Stokes"), committed various acts of assault and battery upon him on July 17, 1999, at the United States Post Office Bulk Mail Center in Greensboro, North Carolina. At the time of the alleged event, both Plaintiff and Stokes were employees of the United States Postal Service. Specifically, Plaintiff was a craftsperson under Betty Berry ("Berry"), Supervisor of Distribution Operations, and was also a union steward for the American Postal Worker's Union, AFL–CIO. Stokes was the Manager of Distribution Operations for the Bulk Mail Center. As to the relevant facts leading up to the alleged torts, Plaintiff asserts that on July 13, 1999, four days prior to the assaults and batteries in question, Kevin Carlton ("Carlton"), Bruce Pemberton ("Pemberton"), Betty Smith, another Supervisor of Distribution Operations at the Bulk Mail Center ("Smith"), and Plaintiff met with Stokes to discuss a grievance that had been earlier filed by Plaintiff. (Compl.¶ 6.) During the meeting, Plaintiff informed Stokes that, while Stokes was away on vacation, Smith had violated union regulations by "upgrading" an employee and performing "craft work." (Id. at ¶ 8.) According to Plaintiff, because of a longstanding friendship that Stokes had with Smith, Stokes became angry at these comments and informed Plaintiff that he or Smith could upgrade whomever they wanted for as long as they wanted. (Id. at ¶ 9.) Plaintiff also alleges that Stokes advised him that he could file additional grievances with respect to the issue of upgrades, if he so desired. In response, Plaintiff reminded Stokes that Stokes' superior, Plant Manager H.E. Puckett, had recently instructed Stokes to reduce the number of grievances that were being filed by union stewards. According to Plaintiff, Stokes replied that he "didn't give a damn" about what Puckett had said. (Id. at ¶ 12.)

On July 16, 1999, Plaintiff and Jim Isenhart, another union steward, relayed Stokes' comments to Puckett. (Id. at ¶ 13;

Lee Aff. ¶ 39.) Plaintiff contends that, upon receiving this information, Puckett stated that he would talk to Stokes. (Compl. ¶¶ 14–15; Lee Aff. ¶ 40.) However, Plaintiff has presented no evidence as to whether Puckett actually spoke to Stokes concerning this matter prior to the alleged assaults.

On July 17, 1999, Plaintiff discussed with Smith another set of grievances that he had, at a Step–One meeting. In this meeting, Plaintiff alleges that Smith implied several times that Plaintiff had lied on her on several occasions. Plaintiff further alleges that, at some point during this meeting, Smith directly called him a "liar." (Compl. ¶ 17.) According to Plaintiff, he responded to this attack by asking Smith if she had "forgotten to take her medication or had taken too much," thus causing her memory to go bad. (Lee Sworn Statement at 1; Smith Sworn Statement at 1.) At this point, Smith suggested that both she and Plaintiff meet with Stokes to discuss the escalating nature of the situation.[1] (Lee Sworn Statement at 1; Smith Sworn Statement at 1.) In accordance with Smith's suggestion, Plaintiff and Smith met with Stokes.

When Smith and Plaintiff entered Stokes' office, Plaintiff alleges that Stokes began pacing the floor and yelling at Plaintiff, "Are you a doctor? What are you doing asking about her medication?" (Compl. ¶ 22.) After additional exchanges took place between Stokes and Plaintiff,

Plaintiff alleges that Stokes intentionally hit him by grabbing the office door with one hand and slamming it forcefully into Plaintiff's right shoulder and back area. (Lee Aff. ¶ 21; Lee Sworn Statement at 1.) Once the door was closed, Plaintiff alleges that Stokes continued to chastise him for the comments that he made to Smith. At the conclusion of the meeting, Plaintiff alleges that, as he was on his way out of the door, Stokes pulled the door back and hit Plaintiff again. (Lee Sworn Statement at 1.) Despite these assertions, Plaintiff does not allege that he said anything at this point to Stokes about the alleged physical contact with his person by the door. Although Smith participated in this meeting, she alleges that she never saw Defendant hit Plaintiff with the door during this time. (Smith Sworn Statement at 1.) According to Plaintiff, Smith witnessed the entire event.

After Plaintiff left the meeting with Stokes, he alleges that he met with Berry and requested that he be allowed to speak with a union steward to report the incident. (Lee Aff. ¶ 27; Lee Sworn Statement at 2.) According to Plaintiff, Berry refused the request. However, approximately five minutes later, Berry brought Plaintiff back into Stokes' office in an attempt to resolve the matter. (Lee Aff. ¶ 30.) After Berry left Stokes' office, Stokes again addressed both Plaintiff's comments about Smith's medication and proper protocol with respect to grievances.

---

1. Although Plaintiff alleged that the events leading up to the initial meeting between him, Stokes, and Smith occurred in this manner, Plaintiff alleged a different series of events in his affidavit. According to Plaintiff's affidavit, Smith testified that after the Step–One meeting ended, she went immediately to Stokes to report Plaintiff's comments. During this meeting between Smith and Stokes, according to what Plaintiff recalls of Smith's testimony, Stokes put his arms around Smith and told her that he would take care of Plaintiff and that everything would be resolved. (Lee Aff. ¶¶ 4–6.) Subsequently, Plaintiff, himself, spoke to Smith, again, to have her sign a "Step–One Grievance Form." According to Plaintiff's affidavit, the form was to indicate that a Step–One meeting had taken place and that Smith had denied the grievance. After Plaintiff made this request, Smith then stated to Plaintiff that she and Plaintiff needed to see Stokes in his office. (Id. at ¶¶ 10–11.)

Stokes then instructed Plaintiff to return to his section. Despite Stokes' instruction, Plaintiff replied that he was still on steward duty time. At this point, Plaintiff alleges that Stokes again became angry, grabbed the door with both hands, swung it open, and hit Plaintiff again, this time, on the left shoulder. (Lee Aff. ¶ 32; Lee Sworn Statement at 3.) Plaintiff further alleges that he then said to Stokes that this was the second time that Stokes had hit him with the door. (Lee Aff. ¶ 33; Lee Sworn Statement at 3.) According to Stokes, this second encounter with the door, about which Plaintiff complains, never occurred.

After Plaintiff's second meeting with Stokes, Plaintiff returned to his duties. Later that day, Plaintiff alleges that he developed pain in his right shoulder, based upon the manner in which he was hit with the door. Upon informing Berry of his injury, Plaintiff alleges that Berry initially refused to allow him medical treatment. Plaintiff, nevertheless, was allowed to obtain treatment on July 19 and July 20, 1999. (Compl. ¶¶ 41–42.) Plaintiff has offered affidavits from his attending physicians, Sebastian J. Ciacchella and Larry W. Grosman, which generally state that Plaintiff sustained an injury to his right shoulder that appears to have been caused by a heavy metal object. (Ciacchella Aff. ¶¶ 13–14; Grosman Aff. ¶¶ 10–11.)

In light of the alleged foregoing events, Plaintiff filed a civil suit against Stokes in Guilford County Superior Court on July 17, 2000, alleging common law claims of assault and battery.[2] Stokes was served with the summons and complaint on September 29, 2000. On October 25, 2000, the Office of the United States Attorney for the Middle District of North Carolina filed a Notice of Removal of this case to the United States District Court for the Middle District of North Carolina. Additionally, the United States Attorney filed a Notice of Substitution of the United States of America ("Defendant") as Defendant. On October 26, 2000, the United States Attorney filed a Motion to Dismiss and in the Alternative for Summary Judgment, alleging that this Court lacks subject matter jurisdiction over Plaintiff's assault and battery claims. Specifically, Defendant alleges that this Court lacks subject matter jurisdiction in this case because claims for assault and battery are not cognizable against the United States under the Federal Tort Claims Act (FTCA) or under the Federal Employees Compensation Act (FECA).

On November 1, 2000, this Court entered an order of substitution, instructing that the United States replace Stokes as Defendant in this matter. This order was based upon certification by the United States Attorney that Stokes was acting within the scope of his employment as a United States postal employee at the time the alleged torts occurred. *See* 28 U.S.C. § 2679(d); 28 C.F.R. § 15.3. Plaintiff contests the substitution, alleging that substi-

**2.** In addition to the civil matter pending before this Court, Plaintiff pursued criminal charges against Paul Stokes, by charging him with assault with a door. Plaintiff also charged Stokes with assault with a deadly weapon, to wit, a supervisor's golf cart. Plaintiff's attorney, James A. Dickens, privately prosecuted the criminal case in Guilford County District Court. On November 22, 1999, the state district court, after hearing all the evidence, dismissed the "golf cart" assault charge and found Stokes "not guilty" of the "door" assault. (Br. Supp. Def.'s Mot. Dismiss at 1, n. 1.)

Plaintiff also filed a successful claim under the Federal Employees Compensation Act for the injury he suffered while on the job. (Br. Supp. Def.'s Mot. Dismiss Ex. 3.) Defendant also filed a National Labor Relations Board charge against Stokes on November 3, 1999, for an assault, resulting in injury, that took place during a grievance session. (Def.'s Reply Br. Ex. 1.)

tution was improper, to the extent that Stokes was not acting within the scope of employment at the time of the alleged assaults and batteries. Given Plaintiff's assertion that the United States has been improperly substituted as the defendant in this action, Plaintiff has alleged that removal of the instant action was improper, and has moved to remand the same to state court. In light of Plaintiff's contentions, the issues of whether removal and substitution were proper will next be addressed in turn.

## II. DISCUSSION

### A. Removal

■ The first issue before this Court is whether removal of this case to federal district court was proper. Section 2679(d)(2) of Title 28 of the United States Code provides the mechanism by which the United States Attorney can certify that a federal employee was acting within the scope of his office or employment at the time of an alleged incident. Pursuant to § 2679(d)(2), upon certification by the Attorney General that a federal employee was acting within the scope of employment at the time an alleged tort took place, a state-court action "shall be removed" to federal court. 28 U.S.C. § 2679(d)(2); see also Martinez v. Drug Enforcement Admin., 111 F.3d 1148, 1152 (4th Cir.1997), cert. denied, 522 U.S. 931, 118 S.Ct. 335, 139 L.Ed.2d 260 (1997).[3] Therefore, for purposes of removal to federal court, certification is "conclusive." 28 U.S.C. § 2679(d)(2) (explaining that "certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal").

The United States Supreme Court's decision in Gutierrez v. Lamagno, 515 U.S. 417, 432, 115 S.Ct. 2227, 2235, 132 L.Ed.2d

375 (1995), provides further support for such a conclusion. In fact, in Gutierrez, the Supreme Court held that an Attorney General's certification pursuant to § 2679(d)(2) serves two purposes: "it forms the basis for the United States to be substituted as a defendant, a consequence that is subject to judicial review;" and "it establishes removal jurisdiction to federal court, a consequence that is not judicially reviewable." Borneman v. United States, 213 F.3d 819, 823 (4th Cir.2000), cert. denied, 531 U.S. 1070, 121 S.Ct. 759, 148 L.Ed.2d 661 (2001) (discussing the decision in Gutierrez). Given this standard, the fact that the United States Attorney offered a certification of scope of employment on behalf of Stokes is conclusive for purposes of removal in this case. For the foregoing reasons, Plaintiff's Motion to Remand this matter to state court is DENIED. See Borneman, 213 F.3d at 825 (explaining that remand to state court is precluded by the Attorney General's removal under 28 U.S.C. § 2679(d) even if the initial defendant is resubstituted into the case). Given this determination, the Court next turns to the issue of substitution.

### B. Substitution

■ Defendant contends that substitution of the United States in this matter was proper because Stokes was acting within the scope of his employment at the time the alleged assaults took place. In light of this assertion, Defendant moves to dismiss, or in the alternative, for summary judgment, to the extent that the United States is immune from suit in this case, and to the extent that the FECA provides Plaintiff's exclusive remedy. The Federal Employee Liability Reform and Tort Compensation Act of 1988, commonly known as the Westfall Act amendment to the FTCA,

**3.** By regulation, the United States Attorneys are authorized to issue certifications on behalf of the Attorney General. *Id.* (citing 28 C.F.R. § 15.3(a) (1996)).

provides guidance as to the merits of Defendant's assertion with respect to substitution and provides:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(1).[4] Given the provisions of the Westfall Act, upon certification by the United States Attorney that Stokes was acting within the scope of his employment at the time of the alleged assault and battery, the United States was properly substituted for Stokes in this case. However, when a certification decision is challenged, as in this case, the appropriateness of substitution is subject to judicial review. *Borneman*, 213 F.3d at 825. When a district court reviews this issue, the certification "serves as prima facie evidence and shifts the burden to the plaintiff to prove, by a preponderance of the evidence, that the defendant federal employee was acting outside the scope of his employment." *Gutierrez*, 111 F.3d 1148, 1153 (4th Cir. 1997), *cert. denied*, 522 U.S. 931, 118 S.Ct. 335, 139 L.Ed.2d 260 (1997); *Maron v. United States*, 126 F.3d 317, 322–23 (4th Cir.1997); *Martinez*, 111 F.3d at 1155 (both stating that certification is prima facie evidence of scope of employment, therefore placing the burden on the plaintiff to show otherwise). To meet this bur-

den, the plaintiff must come forward with "'specific evidence or the forecast of specific evidence that contradicts the Attorney General's certification decision, not mere conclusory allegations and speculation.'" *Webb v. United States*, 24 F.Supp.2d 608, 612 (W.D.Va.1998) (quoting *Gutierrez*, 111 F.3d at 1155); *Martinez*, 111 F.3d at 1155 (explaining that the plaintiff must submit "specific evidence or the forecast of specific evidence that contradicts the Attorney General's certification decision, not mere conclusory allegations and speculation"). In determining whether the plaintiff, has, in fact, met his burden of rebutting the prima facie case, the district court may not simply defer to the certification decision. Instead, "the scope-of-employment question under the Westfall Act is one of law and thus must be reviewed [by the district court] under a de novo standard." *Webb*, 24 F.Supp.2d at 613 (citations omitted).

██ If the plaintiff presents persuasive evidence that refutes the certification, the United States Government may, at that point, come forward with evidence and analysis to show that the alleged torts occurred within the scope of employment. *Martinez*, 111 F.3d at 1155. If, after the presentation of the evidence, the Court finds that the plaintiff has not met his burden by a preponderance of the evidence, then certification is also conclusive as to the question of substitution. *See id.* Furthermore, if the United States is substituted as the party defendant, the federal employee, himself, in this case, Stokes, then enjoys absolute immunity against a suit. As such, the action may only proceed as a suit against the United States under the FTCA. *Borneman*, 213 F.3d at 829.[5]

4. The "plain purpose of the Westfall Act was to override *Westfall v. Erwin*, 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988), which had added a 'discretionary function' requirement, discrete from the scope-of-employment test, as a criterion for a federal officer's per-

sonal immunity." *Gutierrez*, 515 U.S. at 418, 115 S.Ct. at 2228.

5. In this case, however, if the Court finds that Stokes is immune from suit because of the substitution, the Court must still address

In resolving the question of whether an alleged tort occurred within the scope of employment, the district court may resolve disputed issues of fact. *See id.* at 827. To assist in this inquiry, the district court, in its discretion, may allow limited discovery or conduct an evidentiary hearing on the matter of scope of employment. *Martinez,* 111 F.3d at 1155. However, such a hearing is unnecessary if the certification, pleadings, affidavits, and any supporting documents fail to reveal an issue of material fact. *See id.* In addition, at all stages of the process, the district court must "weigh the sufficiency of the evidence, to determine whether genuine issues of fact exist, and ultimately to resolve these factual issues." *Borneman,* 213 F.3d at 827. Once all factual issues have been resolved, the district court must then "weigh the evidence on each side to determine whether the certification should stand." *Gutierrez,* 111 F.3d at 1155. To make such a determination, the district court must apply the respondeat superior law of the state in which the alleged tortious conduct occurred. In this case, the Court must apply North Carolina law to ascertain whether Stokes was acting within the scope of his employment. *See Martinez,* 111 F.3d at 1156.

Under North Carolina law, liability of a principal for the torts of his agent arises in three situations: "(1) when the agent's act is expressly authorized by the principal; (2) when the agent's act is committed *within the scope of his employment and in furtherance of the principal's business;* or (3) when the agent's act is ratified by the principal." *Hogan v. Forsyth Country Club,* 79 N.C.App. 483, 491, 340 S.E.2d 116, 121–22 (1986) (citing *Snow v. DeButts,* 212 N.C. 120, 193 S.E. 224 (1937)) (emphasis added), *review denied,* 317 N.C.

334, 346 S.E.2d 140 (1986). It is the second prong of this agency test, that is, the scope of employment test, that is primarily at issue in this case.

The scope of employment test has been articulated in various ways by North Carolina courts. The inquiry has been phrased as whether the employee was "about his master's business or whether he stepped aside from his employment to commit a wrong prompted by a spirit of vindictiveness or to gratify his personal animosity or to carry out an independent purpose of his own." *Medlin v. Bass,* 327 N.C. 587, 593, 398 S.E.2d 460, 463 (1990) (quotations and internal quotation marks omitted). The question has also been articulated as whether an employee's act "was a means or method of doing that which he was employed to do" or whether he "departed, however briefly, from his duties in order to accomplish a purpose of his own, which purpose was not incidental to the work he was employed to do." *Wegner v. Delly–Land Delicatessen, Inc.,* 270 N.C. 62, 66, 153 S.E.2d 804, 808 (1967) (citations omitted). In sum, under North Carolina law, "[w]hen ... the employee is undertaking to do that which he was employed to do and, in so doing, adopts a method which constitutes a tort and inflicts injury on another it is the fact that he was about his master's business which imposes liability [on the employer]." *Clemmons v. Life Ins. Co. of Georgia,* 274 N.C. 416, 422, 163 S.E.2d 761, 766 (1968) (quotations and internal quotation marks omitted). The Fourth Circuit has noted that the scope of employment analysis under North Carolina law is fact-bound and may involve consideration of such factors as the degree to which the physical confrontation represented an escalation of a

---

whether Plaintiff is precluded by the FTCA and by the FECA from bringing claims of

assault and battery against the United States.

work-related dispute, and the degree to which such confrontation was motivated by personal animosity.[6] *Borneman,* 213 F.3d at 829.

 Following all of the foregoing principles, in order to determine whether substitution of the United States in place of federal employee Stokes was proper, the Court will review and weigh the contentions and evidence supporting the pending motions.[7] In this case, Plaintiff has alleged that, during his initial meeting with Stokes, Stokes struck him twice in his right shoulder. Plaintiff has further alleged that Stokes hit him a third time, on that same day, during a later meeting in Stokes' office. Plaintiff has submitted an affidavit and sworn statement in support of these alleged facts. Additionally, Plaintiff has submitted affidavits from the physicians who examined him several days after the alleged injury. In these affidavits, Plaintiff's attending physicians note that Plaintiff suffered injuries to his right shoulder and to his upper back that were consistent with Plaintiff having been struck with considerable force by a heavy object. (Ciacchella Aff. ¶¶ 13–14; Grosman Aff ¶¶ 10–11.)

As to the evidence submitted by Defendant, Stokes has submitted an affidavit which acknowledges that, during the first meeting, he hit Plaintiff with the door. (Stokes Sworn Statement at 1.) Although

Stokes alleges that he hit Plaintiff accidentally, after weighing the evidence in this case, the Court finds that Plaintiff has established, by a preponderance of the evidence, that Stokes intentionally struck him with the door, on at least one occasion.

Given the Court's factual determinations, the inquiry becomes one of whether Stokes' actions in hitting Plaintiff with the door were such that they fall within the scope of Stokes' employment, thus permitting the United States Attorney's certification decision to stand. The evidence in this case indicates that Plaintiff made a sworn statement to the United States Postal Inspector on July 28, 1999 concerning this incident. In this sworn statement, Plaintiff admitted that the purpose of the meeting with Stokes was to discuss Plaintiff's comments to Smith, whereupon he reprimanded Plaintiff for making such comments. In fact, by Plaintiff's own recount, it was during the course of Stokes' discussion with Plaintiff that the first of the alleged assaults took place. (Lee Sworn Statement at 1.) Plaintiff has neither asserted nor presented evidence that Stokes was acting outside of his authority as manager when he met with Plaintiff to discuss Plaintiff's comments to Smith and to reprimand him for the same.

As to the second alleged assault, Plaintiff states in his sworn statement that,

---

6. While intentional tortious acts are rarely considered to be within the scope of an employee's employment, " 'rarely' does not mean 'never.' " *Borneman,* 213 F.3d at 828. In fact, because scope-of-employment determinations are so fact-intensive, even in cases of intentional torts, "the scope-of-employment question is ordinarily one for the jury" in North Carolina. *Id.* Although, under North Carolina law, the scope-of-employment issue would generally be one for the jury to decide, under the Westfall Act and the FTCA, a "plaintiff seeking relief against a federal employee is not entitled to a jury trial on the scope-of-employment issue, even if the rele-

vant state law would provide a jury trial." *Gutierrez,* 111 F.3d at 1153 (citations omitted).

7. The facts in this matter are established in Plaintiff's Complaint, the pleadings, the affidavits of Plaintiff, Plaintiff's co-worker Don Strouth, Plaintiff's physicians, and the sworn statements taken by the United States Postal Inspector from Plaintiff, Stokes, and Smith. The Court finds that this evidence is sufficient to decide whether Stokes acted within the scope of his employment. Accordingly, an evidentiary hearing was not held in this case.

during the initial meeting after the first assault and battery occurred, Stokes began discussing the Step–One session. It was after this *work-related* discussion that Plaintiff alleges the second assault with the door occurred. (*Id.*) Finally, as to the last alleged assault, Plaintiff's sworn statement indicates that the discussion in Plaintiff's second meeting with Stokes *again* revolved around the Step–One session. In fact, according to Plaintiff's own recount of the events, at some point during this meeting, Plaintiff said to Stokes that he should get Plaintiff and Smith together again for resolution, if Stokes was dissatisfied with what had occurred in the Step–One session. (*Id.* at 2.) According to Plaintiff's own statement, Stokes became angry at this suggestion and threw Plaintiff out of his office. As Stokes slammed the door on Plaintiff, Plaintiff alleges that he was hit with the door a third time. (*Id.* at 2–3.)

Weighing the evidence presented, it appears to the Court that the three alleged assaults on Plaintiff with the door resulted from escalations of work-related disputes between Plaintiff and Stokes. Such a conclusion is supported by the fact that Stokes, without any disagreement by Plaintiff on this point, was acting within his authority as manager while conducting said meetings with Plaintiff and with Smith. Furthermore, the alleged torts occurred on the employer's premises and during working hours. Various courts have held that evidence of this type supports the conclusion that an employee was acting within the scope of his employment at the time of the alleged assaults. *See Wallen v. Domm,* 700 F.2d 124, 125–26 (4th Cir.1983) (explaining that an assault by a supervisor, in a supervisor's office, was within the scope of the supervisor's employment, where the substance of the discussion was work-related); *see also Borneman,* 213 F.3d at 828 (instructing that a factor to be considered by the Court in applying North Carolina principles of

*respondeat superior* is whether the physical confrontation resulted from the "escalation of a work-related dispute"). In fact, as noted by the Fourth Circuit in *Wallen,* "[f]ew government officials are authorized to commit torts as a part of their line of duty, but to separate the activity that constitutes the wrong from its surrounding context—an otherwise proper exercise of authority—would effectively emasculate the immunity defense." 700 F.2d at 126. In light of the foregoing, the Court finds that Stokes' actions were such that the United States Postal Service, his employer, may be held liable, under agency principles, for his conduct.

Notwithstanding the Court's conclusions, Plaintiff contends that Stokes was motivated by personal considerations, and not work-related concerns. Although Plaintiff asserts that Stokes hit him out of personal malice because of the comments that Plaintiff relayed to Puckett, Plaintiff has failed to proffer evidence, beyond mere conclusory allegations, to demonstrate this fact. More specifically, Plaintiff has not established that Stokes completely departed from his duties as manager at the time that he allegedly assaulted Plaintiff. *See, e.g., Brittingham v. United States,* 972 F.Supp. 1014, 1018 (E.D.Va. 1997) (applying Virginia's similar principles of *respondeat superior,* explaining that, where an issue existed as to the relevant motivation leading to the assault and battery of the plaintiff, the plaintiff had failed to establish that the actions arose "from wholly external, independent, and personal motives," and drawing the conclusion that the employee had acted within the scope of employment, in part, because the torts occurred "at work, during working hours, and for his attitude at work"). Because Plaintiff, here, has failed to sufficiently establish that Stokes' actions arose from independent and personal motives unrelated to his managerial responsi-

bilities, Plaintiff has failed to rebut the certification by Defendant that Stokes was acting within the scope of his employment. The Court reaches the same conclusion to the extent that Plaintiff baldly asserts that Stokes assaulted him because of the long-standing friendship he enjoyed with Smith. Conclusory allegations of this type are insufficient to refute the scope of employment certification. *See Martinez,* 111 F.3d at 1155.

Based on the foregoing, the Court finds that, to the extent that Stokes assaulted Plaintiff, Stokes did so while undertaking his duties as manager and while acting within the scope of his employment. *See Clemmons,* 274 N.C. at 422, 163 S.E.2d at 765 (explaining that "[w]hen ... the employee is undertaking to do that which he was employed to do and, in so doing, adopts a method which constitutes a tort and inflicts injury on another, it is the fact that he was about his master's business which imposes liability"); *see also Munick v. Durham,* 181 N.C. 188, 106 S.E. 665, 668–69 (1921) (concluding that evidence that city employee's assault on plaintiff when plaintiff paid a portion of his water bill in pennies was sufficient to withstand summary judgment); *Edwards v. Akion,* 52 N.C.App. 688, 698, 279 S.E.2d 894, 900 (1981) (holding that evidence that sanitation worker grabbed and hit plaintiff in the course of dispute about the manner in which the worker collected plaintiff's refuse precluded summary judgment on the scope-of-employment question), *aff'd,* 304 N.C. 585, 284 S.E.2d 518 (1981). Because the Court has found that Stokes was acting within the scope of his employment at the time that the alleged assaults and batteries occurred, the Court also concludes that the United States was properly substituted as the defendant in this case.

 The Court's conclusion on the issue of scope of employment is also supported by the purported ratification of Stokes' actions by Stokes' employer, as shown by an affidavit from Steve Lambert ("Lambert"), Plant Manager of the Greensboro Bulk Mail Center. This affidavit has established that Lambert believes, based on the facts as alleged in the Complaint, that Stokes was acting within the scope of his employment as manager, at the time of the conduct about which Plaintiff complains. As a consequence of Lambert's statements, Stokes' actions unquestionably have been ratified by his employer. *See Hogan,* 79 N.C.App. at 492, 340 S.E.2d at 122 (employee's actions are brought into scope of employment if employer, by words or actions, ratifies the employee's acts).[8] As such, the United States is also vicariously liable for Stokes' acts under this alternate theory of liability. Restatement (Second) of Agency § 82 (1958) (instructing that, even in cases in which an agent lacks authority, the principal may later ratify the agent's act, "giving it the same effect as if it had been originally authorized"). For all of the foregoing reasons, the Court concludes that the United States was properly substituted as the defendant in this case.

C. Subject Matter Jurisdiction

 In light of the Court's foregoing findings, the Court next turns to Defendant's assertion that this matter should be dismissed for lack of subject matter jurisdiction. To make its determination as to this issue, the Court first turns to the provisions of the Federal Tort Claims Act

---

**8.** Although the Court notes the peculiarity and problematic nature of an employer attempting to ratify an alleged intentional attack on an employee, the Court concludes that, for pur-

poses of agency liability, such a ratification, as an alternative basis of liability to scope of employment, would suffice to create employer liability in this instance.

(FTCA), 28 U.S.C. § 2671, *et seq.* The FTCA was enacted as a limited waiver of the federal government's sovereign immunity for torts committed by employees. It provides that sovereign immunity is waived as to:

claims against the United States, for money damages, ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be held liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). However, at the same time that Congress enacted this waiver of sovereign immunity, it also established exceptions to this waiver. At issue, herein, is 28 U.S.C. § 2680(h), which is the "intentional tort" exception to the FTCA. Pursuant to § 2680(h), immunity has not been waived as to "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h). Therefore, included among those torts for which waiver does not apply are assault and battery. To the extent that Congress has not waived immunity for assault and battery claims against the United States, this matter is not properly before this Court because, as Defendant alleges, this Court lacks subject matter jurisdiction over assault and battery claims against the United States. *See, e.g., Carlyle v. United States,* 674 F.2d 554, 556 (6th Cir.1982) (explaining that the burden of invoking jurisdiction by a pleading that facially alleges matters not excepted by § 2680 is on the plaintiff, and that if the plaintiff fails to do so successfully, the court must dismiss for lack of subject matter jurisdiction).

The Court also notes at this point, that, even if the FTCA did not serve as a jurisdictional bar to Plaintiff's intentional tort claims, Plaintiff's lawsuit would, nonetheless, be barred for lack of subject matter jurisdiction, in that Plaintiff has previously made a successful claim for relief under the Federal Employees Compensation Act (FECA), 5 U.S.C. § 8101, *et seq.* The FECA establishes a worker's compensation program for federal employees, and as Defendant has alleged, it provides the exclusive remedy for a federal employee seeking compensation from the United States for work-related injuries. *See Levine v. United States,* 478 F.Supp. 1389, 1391 (D.Mass.1979). More specifically, the statute precludes an employee who receives benefits under the statute from asserting any other claims for work-related injuries against the United States, including claims under the FTCA. 5 U.S.C. § 8116(c) (instructing that liability of the United States for the injury or death of an employee is exclusive to the FECA); *Lockheed Aircraft Corp. v. United States,* 460 U.S. 190, 193–194, 103 S.Ct. 1033, 1036, 74 L.Ed.2d 911 (1983) (same); *Wallace v. United States,* 669 F.2d 947, 951 (4th Cir.1982) (same).

In this case, Plaintiff filed a FECA claim on or about July 20, 1999 for the injuries to his shoulder. Plaintiff's claim was accepted by the Department of Labor on or about September 20, 2000. To the extent that Plaintiff has already made a successful claim under the FECA, Plaintiff is barred from any further recovery against the United States, including recovery through a lawsuit under the FTCA. *See Wallace,* 669 F.2d at 951. For all of the foregoing reasons, Plaintiff's suit against the United States must be dismissed for lack of subject matter jurisdiction. *See Wallace,* 669 F.2d at 951 (concluding that substitution of the United States under

§ 2679(d) makes the FECA the exclusive remedy for a federal employee); *Sowell v. American Cyanamid Co.*, 888 F.2d 802, 804–05 (11th Cir.1989) (same), *reh'g denied*, 893 F.2d 1341 (11th Cir.1989); *Ezekiel v. Michel*, 66 F.3d 894, 898 (7th Cir. 1995) (holding that a district court is without subject matter jurisdiction to entertain a plaintiff's suit if the action is deemed one against the United States and the FECA is applicable). In light of the foregoing, Defendant's Motion to Dismiss is GRANTED. To the extent that the Court has granted Defendant's Motion to Dismiss, Defendant's alternative Motion for Summary Judgment is moot.

## III. CONCLUSION

For the reasons stated above, Plaintiff Derrick Anthony Lee's Motion to Remand this matter to the Superior Court of Guilford County, North Carolina [Document # 8] is DENIED. Furthermore, Defendant United States of America's Motion to Dismiss, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure is GRANTED, on the grounds that this Court lacks subject matter jurisdiction. For that reason, Defendant's alternative Motion for Summary Judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure [Document # 3], is moot.