**Maralyn F. WHEDBEE, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 1:02 CV 01028.

United States District Court, M.D. North Carolina.

Jan. 7, 2005.

Rosbon D. B. Whedbee, Law Offices of Rosbon D. B. Whedbee, Winston–Salem, NC, for Plaintiff.

Gill P. Beck, Joan Brodish Binkley, Office of U. S. Attorney, for Defendant.

## MEMORANDUM OPINION

BEATY, District Judge.

## I. INTRODUCTION

Plaintiff Maralyn F. Whedbee ("Whedbee") is before this Court with three state law claims relating to her treatment by her supervisor and co-workers at the Federal Aviation Administration, United States Department of Transportation ("FAA"). While Whedbee initially sued her supervisor and co-workers, Rodney L. Carlson ("Carlson"), Jonia A. Widener ("Widener"), and Michael O. Hanson ("Hanson"), respectively, the United States of America ("United States") was substituted as Defendant in place of the three individuals. This Court ordered the substitution [Document # 7] of the United States on January 9, 2003, after the United States Attorney for the Middle District of North Carolina certified that the defendant employees were acting within the scope of their employment at the time of the incidents out of which the claims arose, as per the provisions of 28 U.S.C. § 2679(d)(1).[1] Section 2679(d)(2) further provides that any such

---

1. Section 2679(d)(1) provides that: "[u]pon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced

action pending in State court shall be removed to a United States district court after the substitution. 28 U.S.C. § 2679(d)(2). The case, therefore, was also properly removed from State court on November 26, 2002, when notice of the impending substitution was filed.

Plaintiff now brings a Motion for Reconsideration of Order and for Relief from Orders Pursuant to Rule 60(b) [Document #17], filed on June 2, 2003, nearly five months after this Court's Order of substitution, asking this Court to reconsider the substitution of the United States as Defendant for the individual defendants, Ms. Widener, Mr. Carlson, and Mr. Hanson. As part of this same motion, Plaintiff also requests a remand of this matter back to state court. The United States Response to Plaintiff's Motion for Reconsideration was filed on June 20, 2003 [Document #20].

In addition, Defendant United States brings its own Amended Motion to Dismiss [Document #12], filed on March 11, 2003, for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1); for lack of proper service, pursuant to Rule 12(b)(5); and for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6). Alternatively, Defendant United States has moved for summary judgment, pursuant to Rule 56. Plaintiff filed a Response in Opposition to Defendant's Motion for Summary Judgment, as amended, on June 16, 2003 [Document #19]. Defendant Replied on June 20, 2003 [Document #21]. Thus, these motions are ripe for review.

## II. FACTUAL BACKGROUND

As is proper when considering a Motion to Dismiss, this Court will consider the facts in a light most favorable to the non-moving party, which in this case is the Plaintiff. This action arises out of the alleged poor treatment Plaintiff received at the hands of her co-workers and supervisor. Plaintiff worked as Administrative Secretary to the Manager of the North Carolina Flight Standards District Office ("FSDO"), FAA Southern Region, from July 14, 1991, until her early retirement in September 2001. (Pl.'s Compl., at 1.) Plaintiff's position was paid at the GS–6, step 5 pay rate. (*Id.* at 4.) Plaintiff alleges that the hostile work environment she experienced during that decade of employment had roots in her hiring, because her co-worker, Ms. Widener, an Administrative Officer of the FSDO, was biased against Plaintiff because she had no input in Plaintiff's selection to her position. (*Id.*) Plaintiff alleges that Ms. Widener had worked for the FAA for about seventeen years at the time of Plaintiff's hiring, and so considered the office to be her "fiefdom." (*Id.*) Thus, because Ms. Widener disliked Plaintiff, particularly her "friendly, garrulous and out-going personality," Ms. Widener would derogate the character of Plaintiff to her supervisor, Manager Carlson. (*Id.* at 5.) Plaintiff alleges that beginning in 1992, Ms. Widener would report false accusations about Plaintiff, and get other clerical employees to register complaints about Plaintiff as well, and to generally "trot tales" to Manager Carlson about Plaintiff's personal actions and job performance. (*Id.* at 6.)

Plaintiff contends that this conduct by Ms. Widener had an effect on Plaintiff's relationship with Manager Carlson. As a result, Mr. Carlson would frequently take negative personnel actions against Plaintiff, as well as other subordinates who had incurred his disfavor. (*Id.* at 7.) Plaintiff alleges that Mr. Carlson would frequently "walk up to Plaintiff and ask for an expla-

upon such a claim in a United States district court shall be deemed an action against the United States under the provisions of this title

and all references thereto, and the United States shall be substituted as the party defendant."

nation of some matter ... and would then walk away without comment prior to the Plaintiff completing her explanation or response, while she was still talking." (*Id.*) He also would tell Plaintiff, if she became upset and did not like something, that she could leave, since her husband was a lawyer. (*Id.*) On other occasions he would become agitated at Plaintiff and throw objects in her general direction, without hitting her. (*Id.* at 8.) Plaintiff also complains that Manager Carlson would take the side of other employees against Plaintiff and would blame Plaintiff for something that he did not like without doing any independent investigation. (*Id.*) Furthermore, Plaintiff alleges that Manager Carlson would chastise her in front of other employees, and would not apologize to Plaintiff even when other employees corrected his *mis-impression* of Plaintiff. (*Id.*) Plaintiff also alleges that when a fellow clerical employee began a series of unwarranted "personal verbal attacks" against Plaintiff, Manager Carlson "both tacitly and openly supported the wrongful actions." (*Id.* at 9.)

Plaintiff alleges that a conspiracy developed between Manager Carlson and Ms. Widener to create a hostile work environment against Plaintiff. Plaintiff believes that this was evidenced by Ms. Widener, Mr. Carlson, and Unit Manager Hanson (later Acting Manager) often being observed talking intently in whispers, holding meetings behind closed doors, "sometimes locked." (*Id.* at 5.) Plaintiff alleges that these meetings continued even after Manager Carlson retired in February 2001,

because Acting Manager Hanson, Mr. Carlson, and Ms. Widener would periodically go out to lunch together. (*Id.* at 10.) Plaintiff further asserts that after these lunches, Mr. Hanson would often take some negative action against Plaintiff and other FSDO employees. (*Id.*)

Plaintiff alleges that Acting Manager Hanson began a series of antagonistic verbal assaults against Plaintiff in order to create such a hostile work environment that would force Plaintiff to resign her position. (*Id.*) Plaintiff alleges that Mr. Hanson would use "inappropriate and hurtful" language where the Plaintiff could overhear him. (*Id.* at 11.) Plaintiff complains that Mr. Hanson would back other clerical employees who complained about Plaintiff's allegedly "hostile" attitude. (*Id.*) Mr. Hanson also failed to take corrective action against the same clerical employee whom Plaintiff had earlier reported as making personal attacks against her. (*Id.*) Mr. Hanson's response to Plaintiff's complaints was to advise Plaintiff that she should apply for a medical retirement because of illness suffered by Plaintiff.[2] (*Id.*) Plaintiff further contends that the work environment was hostile to the extent that Mr. Hanson admonished Plaintiff without knowledge of the facts involved in specific instances. (*Id.*) Furthermore, he often berated Plaintiff in a loud, antagonistic, and hostile manner while standing very close to Plaintiff. (*Id.*) Finally, Plaintiff contends that Mr. Hanson, without her knowledge or consent, altered a job performance evaluation of Plaintiff after she filed for retirement.[3] (*Id.* at 12.)

---

**2.** The Court notes that to the extent that Plaintiff's claims appear to allege discrimination based on sex, disability, age, or religion, this suit is also improperly brought, in that such claims must be brought under Title VII of the Civil Rights Amendment of 1991 ("Title VII") and may not be disguised or artfully pled as state law tort claims. *See Pueschel v. United States,* 369 F.3d 345, 348 (4th

Cir.2004)(finding that Title VII establishes the "exclusive and preemptive" scheme under which federal employees can seek redress for employment discrimination).

**3.** Plaintiff also contends that in September 2000, some unknown person placed a large nail against Plaintiff's vehicle's wheel while the car was parked in the FSDO parking area.

From these assertions of fact, Plaintiff brings three claims: one count of intentional infliction of emotional distress, one count of tortious interference with contract, and one count of civil conspiracy. Plaintiff contends that all of the claims were properly filed in state court. Plaintiff did not file an administrative action for these claims with the FAA prior to bringing this lawsuit in state court, which was subsequently removed to this Court. (Def.'s Am. Mem. Supp. Mot. Dismiss or in the Alternative for Summ. J., Ex. D. (Decl. of James S. Dillman)(stating that no administrative action was filed)). For this reason, among others, Defendant contends that Plaintiff's claims should be dismissed because the Court does not have subject matter jurisdiction. The Court will consider the various motions of the parties in turn.

## III. RULE 60(b) MOTION

First, as previously noted, Plaintiff brings a motion under Rule 60(b) of the Federal Rules of Civil Procedure, to ask this Court to reconsider the substitution of the United States as Defendant in this action.

Rule 60(b) of the Federal Rules of Civil Procedure provides in pertinent part:

(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denom-

inated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; ... (6) any other reason justifying relief from the operation of the judgment.

Plaintiff requests that this Court reconsider its Order substituting the United States for the three previous Defendants because "the Court erred in concluding that it had authority to accept jurisdiction of the subject causes of action alleged in the complaint in the instant action, and the Court is therefore without subject matter jurisdiction." (Pl.'s Motion to Reconsider, at 1.) Plaintiff contends that the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b); 2671 *et seq.* ("FTCA"), as amended by the Federal Employees Liability Reform and Tort Compensation Act of 1988, 28 U.S.C. § 2679, which provides for a limited waiver of the United States' sovereign immunity to claims against the government, should not be applied to this case. Plaintiff then refers this Court to its Response to Defendant's Motion for Summary Judgment, which states that the reason the Court has no jurisdiction in this matter is because the FTCA does not by its terms waive the United States' sovereign immunity to claims of intentional conduct, including tortious interference with contract, conspiracy, and intentional infliction of emotional distress. Therefore, Plaintiff argues, she must be allowed to bring her tort claims against the individual defendants in state court, otherwise Plaintiff's "right to sue for redress of civil wrongs including intentional, wrongful, spiteful, malicious and hurtful conduct" would be violated since no claims against the United States would survive dismissal based on sovereign immunity. (Pl.'s Resp. Opp'n Def.'s Mot. Summ. J., at ¶ 5.) Furthermore, Plaintiff argues that

---

For the purpose of making the scope of employment determination, this Court will not consider such an action as part of the deter-

mination, because Plaintiff has not specifically linked the action to Ms. Widener, Mr. Carlson, or Mr. Hanson.

this Court is without jurisdiction to hear this case because there were no other grounds for removal of the action from state court, other than the FTCA.

Additionally, Plaintiff alleges that conduct that is intentional in nature must automatically be outside of the scope of employment, thus the Attorney General's certification must be erroneous. Plaintiff argues that Ms. Widener, Mr. Carlson, and Mr. Hanson were not, in fact, acting within the scope of their employment when they treated Plaintiff in the specific manner described previously. Specifically, Plaintiff states that "the Complaint is replete with allegations that the intentionally tortuous [sic] conduct of the three individual defendants directed toward this Plaintiff ... was 'above and beyond', or clearly 'outside of', the 'purview and scope of managerial actions.'" (*Id.* at ¶ 3.) Plaintiff cites no case law for the scope of employment determination, and merely states that she is adopting Defendant's citations for authority, but is at the same time contending that all of Defendant's citations, without further discussion of any of them, "do not support the Government's contentions, but quite the opposite." (*Id.* at ¶ 5.)

■ This Court finds that Plaintiff's Motion to Reconsider is subject to dismissal on several grounds. First, the Court notes that as Plaintiff filed this Motion nearly five months after the Court's Order substituting Defendant United States for the three individual defendants, Plaintiff's motion is clearly not timely. All motions made under Rule 60(b) must be made within a reasonable time. *Park Corp. v. Lexington Ins. Co.*, 812 F.2d 894, 896 (4th Cir.1987). In this case, Plaintiff has made no showing to explain why the Motion was filed so long after this Court's Order. *See McLawhorn v. John W. Daniel & Co., Inc.*, 924 F.2d 535, 538 (4th Cir.1991)(stating that the court has found on several occasions that a Rule 60(b) motion is not timely when filed three to four months after the original judgment when no valid reason is given for the delay).

■ Second, the Court notes that under Rule 60(b), reconsideration of a legal issue is not permitted. *CNF Constructors, Inc. v. Donohoe Constr. Co.*, 57 F.3d 395, 400 (4th Cir.1995)(holding that where a motion for reconsideration is for legal issues already addressed in an earlier ruling, motion for relief from judgment is not authorized by Rule 60(b)). To the extent that Plaintiff is asking this Court to use Rule 60(b) to overturn its legal conclusion accepting Defendant's Motion for Substitution, this Motion must be denied.

■ However, in addition to failing because of delay in filing and not having a legal foundation in Rule 60(b) in support of it, Plaintiff has made no viable legal argument in either her Motion for Reconsideration or her Response to Plaintiff's Motion to Dismiss that would require this Court to overturn its previous finding that the three FAA employees, Ms. Widener, Mr. Carlson, and Mr. Hanson, acted within the scope of their employment, and thus are absolutely immune from Plaintiff's state tort claims. *See Freeze v. United States*, 343 F.Supp.2d 477, 480 (M.D.N.C.2004). Under this Court's own precedent, *Lee v. United States*, 171 F.Supp.2d 566 (M.D.N.C.2001), the fact that the United States Attorney offers to certify that some federal employee acted within his or her scope of employment is conclusive evidence that a lawsuit may be removed from state court. *Id.* at 572. Once the lawsuit is properly removed from state court, the FTCA applies to the suit, whether or not the conduct alleged is an intentional tort. *Id.* at 578. However, if that certification is challenged, the appropriateness of the substitution is subject to judicial review, upon which the certification serves as *prima*

*facie* evidence that the certification was proper. *Id.* at 573. The evidence of a certification also shifts the burden to the plaintiff to prove, by a preponderance of the evidence, that the defendant federal employee was acting outside the scope of his employment. *Id.* To meet this burden, the plaintiff must come forward with "specific evidence or the forecast of specific evidence that contradicts the Attorney General's certification decision, not mere conclusory allegations and speculation." *Webb v. United States*, 24 F.Supp.2d 608, 612 (W.D.Va.1998). The Court therefore must review the certification decision under a *de novo* standard. *Id.* at 613.

■■■■ To determine whether an alleged tort occurred within the scope of employment, the district court may resolve disputed issues of fact. *Lee*, 171 F.Supp.2d at 574. The court may hold a hearing or allow limited discovery, but need not do so if such a hearing is unnecessary and the certification, pleadings, affidavits, and any supporting documents fail to reveal an issue of material fact. *Id.* Once all factual issues are resolved, the court must then weigh the evidence on each side to determine whether the certification should stand. *Id.* "To make such a determination, the district court must apply the *respondeat superior* law of the state in which the alleged tortious conduct occurred." *Id.* In this case, that means that this Court must apply North Carolina law to see whether Ms. Widener, Mr. Carlson, and Mr. Hanson were acting within the scope of their employment.

■■■■ Under North Carolina law, the liability of a principal for the torts of his agent arises in three situations: "(1) when the agent's act is expressly authorized by the principal; (2) when the agent's act is committed within the scope of his employment and in furtherance of the principal's business; or (3) when the agent's act is ratified by the principal." *Hogan v. For-*

*syth Country Club Co.*, 79 N.C.App. 483, 491, 340 S.E.2d 116, 121–22 (1986) (citations omitted). It is the second part of this test that concerns this case. The scope of employment inquiry has been phrased as whether the employee was "about his master's business or whether he stepped aside from his employment to commit a wrong prompted by a spirit of vindictiveness or to gratify his personal animosity or to carry out an independent purpose of his own." *Medlin v. Bass*, 327 N.C. 587, 593, 398 S.E.2d 460, 463 (1990)(quotations and internal citations omitted). It has also been articulated as whether an employee's act "was a means or method of doing that which he was employed to do" or whether he "departed, however briefly, from his duties in order to accomplish a purpose of his own, which purpose was not incidental to the work he was employed to do." *Wegner v. Delly–Land Delicatessen, Inc.*, 270 N.C. 62, 66, 153 S.E.2d 804, 808 (1967) (citations omitted). While North Carolina courts have rarely found intentional torts to be within the scope of employment, rarely does not mean that such has never occurred. *See White v. Consol. Planning, Inc.*, 603 S.E.2d 147, 157 (N.C.Ct.App.2004)(holding that employee's embezzlement, where it occurred during the precise tasks he was hired to do and was held out to the public as authorized to perform, was within that employee's scope of employment). "In determining liability, the critical question is whether the tort was committed in the course of activities that the employee was authorized to perform." *Id.* at 158.

Defendant argues that all actions alleged by Plaintiff concern personnel actions, plaintiff's work duties, and incidents which occurred during work hours. (Def.'s Resp. Pl.'s Mot. Relief Under 60(b), at 8.) Evidence that disputes were work related, occurred on the employer's premises, and during work hours supports the conclusion

that an employee was acting within the scope of his employment at the time of the alleged incidents. *See Wallen v. Domm,* 700 F.2d 124, 125–26 (4th Cir.1983). Furthermore, Plaintiff goes so far as to admit the complained of behavior occurred within the "course and scope of [Widener, Carlson, and Hanson's] employment with the FAA FSDO." (Pl.'s Compl., at 3.) While Plaintiff argues that any evidence of a personal motivation means these intentional torts cannot have been committed within the scope of employment, the case of *Maron v. United States,* 126 F.3d 317 (4th Cir.1997), while applying Maryland law, is instructive. In *Maron,* the court found various considerations play a role in determining scope of employment, and it cannot be that any one factor, including whether personal motivations played a role, is dispositive. *Id.* at 324. The court found that under Maryland law, conduct "actuated at least in part by a purpose to serve the master" could be within the scope of employment. *Id.* (citation omitted). Therefore, in that case, the court concluded that evidence that a few physicians had personal motivation to allegedly harass another physician, by telling his patients he no longer worked for the company and removing his name as co-author from several publications, was still conduct within the scope of the physicians' employment for purposes of substituting the United States as the defendant. *Id.* at 327. This is because it was among the physicians' duties to communicate with patients, answer phones, and author publications. Thus, "Maron's unsubstantiated speculation about the ill will of his colleagues … is not enough, in and of itself, to transform acts which are facially within the scope of employment into acts that fall outside of that scope." *Id.* (citing *RMI Titanium Co. v. Westinghouse Elec. Corp.,* 78 F.3d 1125, 1143 (6th Cir.1996)).

After weighing all of the evidence, because Plaintiff in this case has made no evidentiary showing, other than conclusory statements expressing Plaintiff's opinion that Ms. Widener, Mr. Carlson, and Mr. Hanson's allegedly tortious conduct was described as "above and beyond" the scope of employment, this Court finds that Plaintiff has not met her burden under the standard identified by the Court in order to disprove the United States Attorney's certification and to show that the actions Plaintiff complained of by the individual defendants were outside the scope of employment in relation to the Plaintiff. While much of the complained of conduct may be questionable in terms of employee-employer or co-worker relations, none of the conduct Plaintiff complains of falls clearly outside of Ms. Widener, Mr. Carlson, or Mr. Hanson's job duties of employee management or employee relations. Therefore, Plaintiff's Motion to Reconsider under Rule 60(b) is denied.

## IV. MOTION TO DISMISS, OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

Defendant United States separately has filed a motion under Rule 12(b)(1), 12(b)(5) and 12(b)(6) for dismissal, or in the alternative, has moved pursuant to Rule 56 for summary judgment. With respect to a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, dismissals are allowed "only in very limited circumstances." *Rogers v. Jefferson–Pilot Life Ins. Co.,* 883 F.2d 324, 325 (4th Cir.1989). Generally, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) (internal quotations omitted); *accord Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993). In making this determination, a court must view

the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded factual allegations. *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). Thus, the purpose of a motion to dismiss is to test the legal sufficiency of the complaint and not the facts that support it. *Neitzke v. Williams*, 490 U.S. 319, 326–27, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Revene v. Charles County Comm'rs*, 882 F.2d 870, 872 (4th Cir.1989)(internal quotations omitted).

In this case, Defendant has raised a number of theories as to why Plaintiff's case should be dismissed. Defendant first argues the case should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction because Plaintiff did not pursue remedies available to her under the FAA's Personnel Management System. Defendant also argues the case should be dismissed for a lack of subject matter jurisdiction under Rule 12(b)(1) because Plaintiff did not comply with provisions of the FTCA by failing to pursue administrative remedies prior to filing suit. In particular, Defendant also argues that Plaintiff's claim of tortious interference with contract should be dismissed because it is specifically excluded by the FTCA as a claim for which the United States has waived sovereign immunity. Furthermore, Defendant argues that as for the claim of intentional infliction of emotional distress, that claim must be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction because of pre-emption under the Federal Employees' Compensation Act, 5 U.S.C. § 8101 *et. seq.* Additionally, Defendant argues that Title VII provides the exclusive remedy for employment-related tort claims. Defendant further argues that the case should be dismissed under Rule 12(b)(6) for failure to state a claim. Defendant also argues that the case should be dismissed under Rule 12(b)(5) because Plaintiff did not properly serve Defendant United States. Finally, to the extent that any claim remains after the previous motions, Defendant argues the case should be dismissed because Defendants are entitled to summary judgment pursuant to Rule 56.

Because the resolution of the issue of whether this Court has jurisdiction of this matter under the FTCA will resolve the matter, the Court will now consider that question solely. The FTCA provides that:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675. Defendant's argument is as follows: the U.S. Attorney has properly certified that the previous individual defendants, Ms. Widener, Mr. Carlson, and Mr. Hanson, acted, at all times complained of by the complaint, within the scope of their employment. This Court's preceding ruling has upheld that certification by the Defendant. As such, Plaintiff may only bring her common law tort claims under the FTCA, which provides a limited, conditional waiver of sovereign immunity by the United States for the torts of Federal government employees committed within the scope of their employment. *Freeze*, 343 F.Supp.2d at 480. In that view, the FTCA

requires that such an administrative claim be filed with the responsible federal agency prior to filing a lawsuit. 28 U.S.C. § 2675(a); *McNeil v. United States*, 508 U.S. 106, 113, 113 S.Ct. 1980, 1984, 124 L.Ed.2d 21 (1993). Plaintiff's failure to file a proper administrative claim will divest this Court of subject matter jurisdiction, because such a failure cannot be waived. *See Plyler v. United States*, 900 F.2d 41, 42 (4th Cir.1990).

■ The record here reveals that Plaintiff did not file claims with the FAA for the actions Plaintiff asserts here prior to bringing this lawsuit in state court, which was subsequently removed to this Court. (Def.'s Am. Mem. Supp. Mot. Dismiss or in the Alternative Summ. J., Ex. D. (Decl. of James S. Dillman)). Plaintiff has not contested Defendant's assertion that she did not bring an administrative action with the FAA. Plaintiff also has not stated in her Complaint or in any other pleading before the Court that she had filed such an administrative action. Accordingly, the Court finds that Plaintiff failed to exhaust her administrative remedies regarding the tort claims asserted in this matter, to wit, tortious interference with contract, intentional infliction of emotional distress, and conspiracy. For this reason, the Court lacks subject matter jurisdiction of Plaintiff's claims based upon the FTCA and Plaintiff's claims must therefore be dismissed.

■ Alternatively, as to the tortious interference with contract claim, even if Plaintiff had exhausted her administrative remedies, this Court would still have no subject matter jurisdiction as to that specific claim. While Plaintiff argues that the FTCA does not apply to any intentional torts, this statement is incorrect. Some intentional torts are covered by the FTCA, while for other intentional torts the United States has refused to waive sovereign immunity under that act. A

claim for tortious interference with contract is one of those claims that is specifically excluded by the FTCA as a claim that can be brought against the United States. 28 U.S.C. § 2680(h). The FTCA was enacted as a limited waiver of the federal government's sovereign immunity for torts committed by employees. It is a limited waiver, because at the same time that Congress established this avenue for suit, Congress also established exceptions to that waiver. Under § 2680(h), a number of specifically enumerated intentional torts are excluded from the FTCA. "Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights" are all specifically excluded from the ambit of the FTCA. "This immunity applies even where federal law does not otherwise provide a remedy against the United States." *Bieregu v. Ashcroft*, 259 F.Supp.2d 342, 351 (D.N.J.2003)(citing *United States v. Smith*, 499 U.S. 160, 166, 111 S.Ct. 1180, 1185, 113 L.Ed.2d 134 (1991)). This means that although Plaintiff may not have a remedy in this Court, Plaintiff still cannot sue on her intentional tort claims in state court, as she argues. Instead, because the United States has been substituted as the only proper Defendant—which means the FTCA applies to this case—and because tortious interference with contract is a claim for which the Government has not waived sovereign immunity, this Court lacks subject matter jurisdiction over that claim and would continue to lack subject matter jurisdiction over it even if Plaintiff had timely filed it with the FAA prior to filing this suit. *Lee*, 171 F.Supp.2d at 578. Therefore, had the Court not dismissed the case for the failure to file an administrative action first, this Court would also have had to dismiss the tortious interference claim, at a mini-

mum, because of the exception to FTCA at § 2680(h).

## V: CONCLUSION

For the reasons stated herein, the Court holds that Plaintiff's Motion for Reconsideration under Rule 60(b) is DENIED. Furthermore, Defendant's Motion to Dismiss under 12(b)(1) is GRANTED with respect to all of Plaintiff's claims. Accordingly, Defendant's alternative motion for summary judgment is DISMISSED as moot. An Order and Judgment consistent with this Memorandum Opinion shall be filed contemporaneously herewith.