**Barry J. MARON, Dr., Plaintiff–Appellant,**

**v.**

**UNITED STATES of America; Stephen E. Epstein, Dr.; Lameh Fananapazir, Dr.; Edward Korn, Dr.; Neil Epstein, Dr., Defendants–Appellees.**

**No. 96–1492.**

United States Court of Appeals, Fourth Circuit.

Argued Jan. 27, 1997.

Decided Sept. 18, 1997.

**ARGUED:** Lori Elizabeth Kline, Jacobs, Jacobs & Farber, Rockville, MD, for Plaintiff–Appellant. Mary Mitchell Armstrong, Office of General Counsel, Department of Health and Human Services, Washington, DC, for Defendants–Appellees. **ON BRIEF:** Mindy G. Farber, Jacobs, Jacobs & Farber, Rockville, MD, for Plaintiff–Appellant. Lynne A. Battaglia, United States Attorney, Jeanne K. Damirgian, Assistant United States Attorney, Baltimore, MD, for Defendants–Appellees.

Before ERVIN and LUTTIG, Circuit Judges, and HILTON, United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by published opinion. Judge ERVIN wrote the opinion, in which Judge LUTTIG and Judge HILTON joined.

## OPINION

ERVIN, Circuit Judge.

Dr. Barry Maron filed two suits against fellow doctors at the National Institutes of Health (N.I.H.). In each case, the United States was substituted as the sole defendant and the complaint was dismissed on the ground that the United States had sovereign immunity from suit. Maron appeals both dismissals. For the reasons explored below, we affirm.

I

On May 6, 1993, Maron filed a five count complaint, hereinafter called "Maron I," charging that Doctors Stephen Epstein, Lameh Fananapazir, Edward Korn and Neal Epstein had committed tortious acts against him, including, among other things, intention-

al infliction of emotional distress, civil conspiracy, and invasion of privacy. Maron also included the United States as a defendant in this complaint. Maron, a renowned cardiologist, was serving as Director of the Echocardiography Laboratory at the N.I.H. when the complained-of incidents began, and the defendants were his colleagues. Sometime in 1989, Maron discovered that Fananapazir was engaging in what Maron believed to be scientific misconduct. Maron voiced his concerns to a superior at the N.I.H. Shortly thereafter, Maron alleges, he began to be treated very poorly by his fellow physicians. Maron's specific allegations are detailed in his complaints and include assertions that the doctors removed him from positions of power in the Lab, denigrated him in front of his patients, published false accusations about him, restricted his access to patients and ongoing experiments, removed his name as co-author of several publications, declined to credit him for his work at the Lab, and told patients that he was no longer employed at the N.I.H. It is noteworthy that, although the most serious incidents allegedly occurred after Maron reported Fananapazir's misconduct, his complaint also lists poor treatment at the hands of the defendants prior to Maron's discovery and report concerning Fananapazir.

On July 22, 1993, the United States filed an answer to the complaint in Maron I and moved, pursuant to 28 U.S.C. § 2679, to substitute itself as the sole defendant.[1] The acting United States Attorney for the District of Maryland filed a certification that he had read the complaint and other documents and that he believed the doctor-defendants had been acting within the scope of their federal employment at the time of the alleged acts. The district court denied Maron's attempts to challenge the certification because our circuit law at the time held that certifications were dispositive on the issue of substitution and were not judicially reviewable. *See Johnson v. Carter,* 983 F.2d 1316 (4th Cir.1993) (en banc), *overruled by Gutierrez de Martinez v. Lamagno,* 515 U.S. 417, 115 S.Ct. 2227, 132 L.Ed.2d 375 (1995). The district court therefore granted the motion for substitution without a hearing. The district court eventually dismissed Maron's complaint pursuant to the *Feres* doctrine and on the ground that suit against the United States is barred by sovereign immunity, which the United States has not waived for the torts alleged in Maron's complaint.[2]

On September 19, 1994, before Maron I was dismissed but after the United States had moved for its dismissal, Maron filed "Maron II" in Maryland state court. The verified complaint is similar to that in Maron I, although Maron added a handful of new incidents which allegedly occurred after he left the N.I.H. and began employment elsewhere. Maron alleged that the defendants continued to publicly denigrate his skill and harass him even after he left the N.I.H., telling his subsequent employer that he was untrustworthy. In addition, Maron alleged that he received several harassing phone calls, that a cruel sign was hung in his old office after he left, and that his new colleagues received faxes besmirching Maron's character and ability. Maron was and still is unable to specifically attribute the faxes, sign, or calls to any of the named defendants and the incidents are simply charged in his complaint to anonymous perpetrators.

In October 1994, the government filed a notice removing Maron II to federal court

---

**1.** 28 U.S.C. § 2679(d)(1) provides:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

Section 2679(d)(2) provides for removal of cases from state to federal court and substitution of the United States as the party defendant in those cases.

**2.** *See Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950) (holding that the United States is not liable under the Tort Claims Act for injuries to service persons arising out of military service). Maron does not question, and we do not address, whether the district court was correct to dismiss Maron's suits against the government once the substitution decision was made.

and moving for substitution of the United States as the sole defendant; again, the United States attached a scope of employment certification. While motions were pending in both cases, including Maron's motion to have the case remanded to state court and his opposition to the substitution of the United States, the Supreme Court decided *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 115 S.Ct. 2227, 132 L.Ed.2d 375 (1995) ("*Gutierrez*"), which held that certifications regarding the scope of employment were reviewable by the district court.

In light of *Gutierrez*, the district court held a hearing and invited legal memoranda on the issue of the proper procedure for reviewing the certifications from both Maron I and Maron II. The court also allowed Maron to seek discovery limited to the scope of employment issue. The district court had to remind Maron several times to limit the scope of his discovery demands and finally ordered Maron to depose several defendants in its presence.

■ On March 19, 1996, the district court held an evidentiary hearing to decide the issue of substitution. Following Maron's presentation of evidence and extensive colloquies between the district court and counsel to both parties, the court concluded that the defendants had been acting within the scope of their employment in all of the counts from both Maron I and Maron II. Then, with the single exception of paragraph 67 in Maron II, the court dismissed all counts of both suits on the grounds of sovereign immunity and the *Feres* doctrine. *See supra* note 2. Maron I was closed and Maron II was reduced to paragraph 67.[3] On April 18, 1996, Maron

filed a notice of appeal in both Maron I and Maron II and moved to dismiss Maron II. On May 8, the court granted this motion and closed Maron II.[4]

II

■ The Federal Tort Claims Act (Tort Claims Act), as amended by the Federal Employee Liability Reform and Tort Compensation Act (FELRTCA), codified at 28 U.S.C. §§ 1346(b), 2671–80, immunizes a federal employee from liability for his "negligent or wrongful .act[s] or omission[s] ... while acting within the scope of his office or employment...." 28 U.S.C. § 2679(b)(1). When a federal employee is sued, the United States Attorney, acting on behalf of the Attorney General, must certify whether that employee was in fact acting within the scope of his or her employment at the time of the alleged tortious act. 28 U.S.C. § 2679(d)(1). Once this certification has been made, the United States is substituted as the sole defendant and all suits filed in state court are removed to federal court; then the plaintiff's sole route for recovery is the Tort Claims Act. For many torts the United States has not waived its sovereign immunity through the Tort Claims Act and therefore, the plaintiff cannot recover from the federal government despite the merits of his or her claim. *See* 28 U.S.C. 2680(h); *see also, e.g., Johnson v. Carter*, 983 F.2d at 1323 n. 9 (dealing with defamation, for which the United States has not waived its sovereign immunity); *Brown v. Armstrong*, 949 F.2d 1007, 1012 (8th Cir. 1991) (stating that the United States cannot be sued for certain intentional torts). However, even in cases where the United States

---

**3.** In paragraph 67 Maron alleged that Fananapazir made a comment to him suggesting that he should commit suicide. Without passing upon the credibility of this allegation, the district court found that it was not within the scope of employment. This conclusion is not on appeal.

**4.** The United States argues that we lack jurisdiction to hear Maron's appeal in Maron II because he filed his notice of appeal before the case was finally dismissed with respect to paragraph 67 and closed, but after he had petitioned, unopposed, for its dismissal. We agree that Maron technically filed for review prematurely and that substitution of the United States as a defendant does not satisfy the test set forth in *Cohen v.*

*Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949), for when review of an interlocutory order is appropriate under the collateral order doctrine.

However, to refuse to consider the appeal of Maron II when we are considering an identical issue in Maron I, and when Maron's sole error was a slightly premature filing of his notice of appeal would be overly mechanistic and a waste of judicial resources. Furthermore, since we ultimately affirm the dismissal of both cases in the instant opinion, Maron II would remain dismissed whether we reach the merits of Maron's appeal or decline to take jurisdiction.

has not waived its immunity, the United States must still be substituted and the individual defendant still remains immune from suit if the tort occurred within the scope of employment. The plaintiff, despite the seeming unfairness, cannot proceed against the individual defendants. *See United States v. Smith,* 499 U.S. 160, 165, 111 S.Ct. 1180, 1184–85, 113 L.Ed.2d 134 (1991); *Johnson,* 983 F.2d at 1323–24; *Brown,* 949 F.2d at 1012–13 (affirming substitution of United States for the individual defendants even though plaintiffs were barred by sovereign immunity from actually recovering from United States for intentional torts at issue).

The primary issue in the instant case is the propriety of the substitution of the United States as the proper defendant to Maron's suits. Although the United States' certification would have been, at one time, treated as conclusive on the substitution issue, the recent *Gutierrez* decision means that we may no longer decline to judicially decide whether substitution is proper. In the instant appeal, Maron challenges the procedures employed by the district court in reaching the substitution decision, the court's application of state and federal law, and the court's ultimate conclusion that substitution was proper. We find Maron's arguments unpersuasive, and we affirm all of the lower court's conclusions. Further, we specifically embrace the procedures the district court employed in reviewing the scope of employment certification as the proper ones for cases arising in our Circuit.

## A

We will first address the procedures and burden of proof used by the district court in reviewing the scope of employment issue in the instant case. Following lengthy preliminary hearings and motions designed to determine the proper procedural approach, the district court held that Maron bore the burden of proving that the defendants were not acting within the parameters of their jobs at the N.I.H. when the alleged torts occurred. At the final hearing on the issue the court stated:

> It is the plaintiff's burden to prove by a preponderance of the evidence that the actions complained of were not within the scope of employment. . . . [O]nce the certification is filed it constitutes, in effect, a motion for summary judgment and challenges the plaintiff to come forward with an evidentiary showing that, if proven, would be sufficient to take a case out of the scope of employment as shown by the certification.

J.A. 273.

We hold that the procedures employed by the district court are the proper ones for evaluation of a scope of employment certification. *See Gutierrez de Martinez v. Drug Enforcement Administration,* 111 F.3d 1148, 1152–55 (4th Cir.1997). Each circuit court which has addressed the proper procedures for review of a certification has agreed that the district court must decide the issue *de novo,* has placed the burden of proof on the plaintiff, and most have accorded the certification itself some prima facie weight in proving the government's position. *See Schrob v. Catterson,* 967 F.2d 929, 936 (3d Cir.1992) [5]; *Hamrick v. Franklin,* 931 F.2d 1209, 1211 (7th Cir.1991); *Brown v. Armstrong,* 949 F.2d 1007, 1012 (8th Cir.1991); *Green v. Hall,* 8 F.3d 695, 698 (9th Cir.1993); *S.J. & W. Ranch, Inc. v. Lehtinen,* 913 F.2d 1538, 1543 (11th Cir.1990), *amended,* 924 F.2d 1555 (1991); *Kimbro v. Velten,* 30 F.3d 1501, 1509 (D.C.Cir.1994). Several of these courts suggested that, because the statute itself grants the Attorney General the initial right to decide the certification issue, it is more consistent with the FELRTCA to place the burden on the plaintiff in this way to disprove the Attorney General's conclusions. *Brown,* 949 F.2d at 1012; *Melo v. Hafer,* 13 F.3d 736, 747 (3d Cir.1994); *Green,* 8 F.3d at 698 n. 2; *S.J. & W. Ranch,* 913 F.2d at 1543. Although

---

**5.** In *Melo v. Hafer,* 13 F.3d 736 (3d Cir.1994), the Third Circuit revisits some of the issues explored in *Schrob* and favorably restates many of *Schrob*'s holdings. One difference between the decisions is that *Melo* states that a certification can be given prima facie effect in a hearing when it contains the basis for its conclusions. *Id.* at 747. The *Melo* court does not state that the certification has less value if it is not explicit about its bases, but that is perhaps the implication.

many of our sister circuits have not mentioned the quantum of the plaintiff's burden of proof, two circuits have specified that the appropriate burden is for the plaintiff to prove his or her position by a preponderance of the evidence. *See Billings v. United States,* 57 F.3d 797, 800 (9th Cir.1995); *Green,* 8 F.3d at 698.

Maron does not point to any court of appeals decision which embraces his suggestion that the government bear the full burden of proof on the substitution issue. Instead, Maron attempts to distinguish the above authority on the ground that it preceded the *Gutierrez* decision. Maron asserts that the rationale behind the Court's decision in *Gutierrez,* 515 U.S. at 427–29, 115 S.Ct. at 2233, supports the view that the government should bear the burden of proving the foundation for its certification. He points out that the *Gutierrez* Court mandated judicial review of certification because, in cases involving torts for which the United States has not waived its sovereign immunity, the government has a strong incentive to bring employees within the protection of that immunity by stating that the tort was within the scope of employment; there is no countervailing incentive not to seek substitution. *Id.* Maron argues that the tone of *Gutierrez* mandates a change of the procedure used by courts which already reviewed the certifications prior to that decision. We do not agree. The courts listed above that mandate placing the burden of proof on the plaintiff each already provided judicial review for certifications prior to *Gutierrez,* presumably in recognition of the same biases that the *Gutierrez* Court itself recognized. Yet they did not embrace Maron's suggestion that the government must bear the burden of proof. Even after *Gutierrez,* those courts have not changed their settled policies. Moreover, several courts have reiterated, since the Supreme Court decided *Gutierrez,* that the certification acts as prima facie evidence and that the plaintiff bears the burden of proof on the scope of employment issue. *See Heuton v. Anderson,* 75 F.3d 357, 361 (8th Cir.

1996); *Flohr v. Mackovjak,* 84 F.3d 386, 390 (11th Cir.1996). Maron also relies upon a single district court decision, *Nevarez v. United States,* 903 F.Supp. 1094 (W.D.Tex. 1995), *rev'd,* 95 F.3d 1149 (5th Cir.1996). In *Nevarez* the court placed the initial burden upon the government to show the evidentiary basis for issuing the certification and then required the plaintiff to refute that evidence. *Id.* at 1096. However, *Nevarez* was reversed by the Fifth Circuit. *Nevarez v. United States,* 95 F.3d 1149 (5th Cir.1996). Although no opinion was published by the Fifth Circuit explaining the basis for its reversal, the district court explained on remand that the court of appeals reversed because it had been error for the lower court to place the burden of proof on the issue of substitution on the government rather than the plaintiff. *Nevarez v. United States,* 957 F.Supp. 884, 887 n. 3 (W.D.Tex.1997).[6]

We join with our sister circuits in placing the burden of proof on the plaintiff to refute the certification of scope of employment issued by the Attorney General and to prove by a preponderance of the evidence that the defendants were not acting within the scope of their employment. We specifically hold that the certification satisfies the government's prima facie burden but does not carry any evidentiary weight unless it details and explains the bases for its conclusions. If the plaintiff presents persuasive evidence refuting the certification, the government must provide evidence and analysis to support its conclusion that the torts occurred within the scope of employment. We hold that these procedures were properly applied in the instant case.

B

Maron next argues that the district court misunderstood and misapplied Maryland law in the instant case when it concluded that the defendants had acted within the scope of employment. Again, we disagree. Although a federal court must decide the scope of employment issue in a case brought

---

**6.** Although the Fifth Circuit reversed *Nevarez I* before Maron filed his brief, Maron relied on it and entirely failed to mention that the case was no longer good law. Even at oral argument Maron refused to acknowledge that the one case upon which he relied to support his position on the appropriate allocation of burdens of proof had been reversed.

pursuant to the FELRTCA, it must do so using the law of the state in which the tort occurred. *See Williams v. United States,* 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955) (per curiam); *Jamison v. Wiley,* 14 F.3d 222, 237 (4th Cir.1994); *Johnson v. Carter,* 983 F.2d 1316, 1322 (4th Cir.1993), *overruled on other grounds by Gutierrez,* 515 U.S. 417, 115 S.Ct. 2227, 132 L.Ed.2d 375 (1995). The district court properly applied Maryland law in the instant case.

At the hearing on the certification issue, the district court gave a lengthy summary of Maryland's respondeat superior law which was largely drawn from a Maryland Court of Appeals decision, *Sawyer v. Humphries,* 322 Md. 247, 587 A.2d 467 (1991). That summary provided, in part:

> To be within the scope of employment, the conduct must be of the kind the servant is employed to perform. Two, [it] must occur during a period not unreasonably disconnected from the authorized period of employment in a locality not unreasonably distant from the authorized area. Three, [it must be] actuated at least in part by a purpose to serve the master. Another important factor is whether the employee's conduct was expectable or foreseeable. And then[the case] goes on to discuss if there are personal motivations, it says in cases involving intentional torts committed by an employee, the Maryland Court has emphasized that where an employee's actions are personal or where they represent a departure from the purpose of furthering the employer's business or where the employee is acting to protect his own interest, even if during normal duty hours and at an authorized locality ... the employee's actions are outside the scope of his employment....
>
> [I]f there is any purpose to serve the employer's objectives it is within the scope of employment. So unless there is evidence that, if believed, would show that what any of the doctors were doing was purely for personal motivation and could not in any way be foreseeable or expectable in their role as N.I.H. physicians, then the plaintiff cannot prevail on the scope of employment issue.

J.A. 287–89. Applying these standards, the district court found that all of the alleged incidents which were attributed to the doctors in this case were within the scope of their employment and that Maron remained unable to prove otherwise.

Maron asserts that the district court failed to recognize that, under Maryland law, he should only have been required to prove one element—that the doctor-defendants were motivated by personal considerations to some measure—in order to prevail. However, Maron's analysis on this point is quite flawed.

We find that the district court simply did not misapprehend Maryland respondeat superior law. The Maryland Court of Appeals in *Sawyer* listed "various considerations" which play a role in determining the scope of employment and never said that any one factor, including whether the employees were partially motivated by personal considerations, is dispositive. *Sawyer,* 587 A.2d at 471. In fact the *Sawyer* court said "[i]n applying this test there are few if any absolutes." *Id.* at 471. The court states that many matters of fact, including the elements listed by the district court in the instant case, are to be considered in deciding the parameters of one's employment. *Id.* With respect to the employee's motivation, the *Sawyer* court favorably quoted an earlier case which found that conduct "actuated at least in part by a purpose to serve the master" could be within the scope of employment. *Id.* at 471 (quoting *East Coast Freight Lines v. Mayor & City Council of Baltimore,* 190 Md. 256, 58 A.2d 290, 304 (1948)).

Maron argues that *Sawyer* creates separate tests for determining scope of employment for intentional and negligent torts, and that the former may not be motivated in any way by personal considerations if they are to fall within the scope. We agree that *Sawyer* suggests that intentional torts fall outside the scope of employment if an employee is "acting to protect his own interests," and implies that such torts might be more closely examined to determine whether "an employee's acts are personal or where they represent a departure from the purpose of furthering the employer's business...." *Sawyer,* 587 A.2d at 471. However, we do not agree that

*Sawyer* creates completely separate tests for intentional and negligent torts. Instead, the quoted passages list additional factors which influenced prior courts addressing the scope of employment issue. *See also Market Tavern, Inc. v. Bowen*, 92 Md.App. 622, 610 A.2d 295, 311 (1992) (discussing many factors described in *Sawyer* as applying to intentional torts). Further, even if we should apply somewhat heightened scrutiny to intentional torts, we find that Maron is simply wrong to suggest that if he can prove that personal motivation may have played a role in the tort, however slight, he must automatically prevail.

Moreover, we have previously emphasized the importance of looking at the allegedly tortious act in context, rather than in a vacuum, in deciding whether it is within the scope of employment:

> Few government authorities are authorized to commit torts as part of their line of duty, but to separate the activity that constitutes the wrong from its surrounding context—an otherwise proper exercise of authority—would effectively emasculate the immunity defense. Once the wrongful acts are excluded from an exercise of authority, only innocuous activity remains to which immunity would be available. Thus the defense would apply only to conduct for which its not needed.

*Johnson v. Carter*, 983 F.2d at 1323. Maron asks us to consider only whether the defendant doctors held animosity towards him, a fact that remained unproven at the evidentiary hearing on this matter, and to use that sentiment alone to deny substitution. Instead it is more proper to notice, as the district court did, that all of the complained of acts were the very sort that the defendants conducted during a regular work day. Even if the defendants harbored ill will for Maron, we will not look at that ill will alone, but must look at the alleged acts and the doctors' duties at the N.I.H. in making the decision about whether they were acting within the scope of employment.

We conclude that the district court properly explained and applied Maryland respondeat superior law in this case.

C

■ Maron next suggests that the FELRTCA does not provide for substitution of the United States in cases alleging intentional torts rather than mere negligence, regardless of whether the torts otherwise fall within the scope of employment. In support of this position he cites an excerpt from FELRTCA's legislative history that states "[i]f an employee is accused of egregious misconduct rather than mere negligence or poor judgment, then the United States may not be substituted as the defendant." H.R.Rep. No. 700, 100th Cong.2d Sess. 5, reprinted in 1988 U.S.C.C.A.N. at 5949. Maron also quotes *Kimbro v. Velten*, 30 F.3d 1501, 1505 (D.C.Cir.1994), for the proposition that "generally an intentional tort is regarded as falling outside the scope of employment."

We first note that the FELRTCA requires us to look to Maryland law on this issue, and, as explored to a degree above, under Maryland law there is no rule that intentional torts per se cannot fall within the scope of employment. Recall that *Sawyer* noted that there are no absolutes in making the determination of scope of employment, and some of the above quoted language from *Sawyer* explicitly considers that intentional torts must be individually examined to decide whether they are within the scope of employment. *Sawyer*, 587 A.2d at 471. Further, an earlier decision of the Maryland Court of Appeals, *Cox v. Prince George's County, Md.*, 296 Md. 162, 460 A.2d 1038 (1983), also supports this conclusion. In *Cox*, the court stated quite plainly that "a master may be held liable for the intentional torts of his servant where the servant's actions are within the scope and in furtherance of the master's business and the harm complained of was foreseeable." *Id.* at 1043. Maryland law simply does not require us to take the position advocated by Maron and we decline to do so.

Second, we find that Maron's reliance on *Velten* is misplaced. He quotes an out-of-context fragment of a sentence from that decision to support his contention that intentional torts are not covered within the scope

of employment in most states. The full relevant sentence does not suggest that most state law excludes all intentional torts from possible inclusion in the scope of employment:

> Although the tort and agency laws of the states vary, generally an intentional tort is regarded as falling outside the scope of employment—at least if the employee's conduct is "different in kind from that authorized ... or too little activated by a purpose to serve [the employer]."

*Velten,* 30 F.3d at 1505 (ellipsis in original) (quoting the Restatement of Agency (Second), § 228 (1958)). *Velten* clearly considers that in certain circumstances, such as the one before us, intentional torts include conduct which is not different in kind from the employee's job and which is not motivated solely by personal considerations; therefore those torts can fall within the scope of employment.

 Finally, we hold that the FELRTCA does not preclude substitution in cases of intentional torts, regardless of the governing state law. In *Johnson v. Carter,* we reiterated an earlier holding that, "application of the immunity is not affected by whether the injury was committed in good faith, negligently, or even intentionally." *Johnson v. Carter,* 983 F.2d at 1323 (citations omitted); *see also Aversa v. United States,* 99 F.3d 1200, 1209 (1st Cir.1996) ("[A]n intentional tort excepted by section 2860(h)(from waiver of sovereign immunity) can be within the scope of employment if state respondeat superior law so requires."). The plain language of 28 U.S.C. § 2679 further supports our reading, as it includes "negligent or wrongful act[s] or omission[s]" among torts for which the United States can be substituted as the defendant. To accept Maron's analysis would be

to find substitution unavailable for any tort committed by an employee acting squarely within his or her scope of employment simply because the plaintiff ascribes malicious motive to that employee's actions. We hesitate to interpret a federal law designed to promote immunity for federal employees in this way, absent clear instruction from Congress.

## D

 Maron next asserts that, even if the legal procedures and standards applied by the district court and discussed above were the proper ones, the court should have nonetheless found the complained-of actions to be outside the scope of employment. Again, we do not agree. We hold that the district court was correct to conclude that each of the complained-of acts attributed to named defendants,[7] with the exception of paragraph 67, were of the sort that doctors at the N.I.H. are hired to perform.[8] For instance, Maron alleged that Fananapazir once answered a phone call at the N.I.H. and told a patient that Maron no longer worked there, when in fact, Maron was still employed at the N.I.H. The defendants deny that Fananapazir told this to the patient and insisted that he told the patient simply that Maron was unavailable. Regardless of which version of the facts is accurate, the district court found that communicating with patients and answering phone inquiries are within the parameters of Fananapazir's job and that, in answering the call, he was motivated at least partially by a desire to perform his duties properly. Similarly, the district court found that the publications issued without Maron's name, the experiments from which he was allegedly excluded, and the poor recommendation given by Stephen Epstein were all

---

7. Maron argued to the court below that the charges which were attributed to anonymous defendants, including the denigrating faxes and phone calls to his new residence and place of employment in Minnesota, were outside the scope of employment. The district court did not specifically disagree, but declined to consider these acts in making the substitution decision because there was no evidence or even an overt allegation that they had been done by the defendants. We find that it was entirely proper to preclude Maron from keeping the private defendants in the case by merely speculating that they

had been responsible for hostile acts which would have been beyond their job descriptions had they been responsible.

8. We will review for clear error the factual conclusions reached by the district court. *See Jamison v. Wiley,* 14 F.3d 222, 237 (4th Cir.1994). However, the ultimate determination of whether those facts require a finding that the alleged torts were within the scope of employment is a legal one to be reviewed *de novo. See Coleman v. United States,* 91 F.3d 820, 823 (6th Cir.1996).

foreseeable within the course of the doctors' positions at the N.I.H. Further, while the doctors may have been motivated in part by personal and improper considerations, they were clearly motivated, at least in part, by the requirements of their employment at the N.I.H.

Maron did very little at the hearing below to refute the certification and prove that the complained-of acts were outside the scope of employment. He reiterated his conclusory assertions that the defendants were motivated by ill will, but he introduced no substantial evidence or witnesses in support of his position. For example, he offered no job descriptions which suggested that answering phone calls, publishing, or conducting research were not within the defendants' job descriptions. In contrast, most of the depositions Maron took of defendants and superiors at the N.I.H. supported the United States' position that the defendants had been acting within the scope of their employment.

Maron, at the hearing, did repeatedly refer to one piece of evidence, a letter written by a superior at the N.I.H. to a patient's family. J.A. 346. This letter was written to apologize to the patient's family after Fananapazir mistakenly told them that Maron no longer worked at the N.I.H., and it encouraged them to bring their son for experimental care by Fananapazir. Maron lists this phone call as one of the torts committed against him by his colleagues and he asserts that the letter proves that the call was outside the scope of employment. We agree that the letter suggests that some personal or professional animosity may have existed between Fananapazir and Maron. However, the letter also states that Fananapazir's interactions with the young patient and his family were born entirely of his commitment to provide excellent medical care as part of his job at the N.I.H. It is noteworthy that while the N.I.H. representative who wrote the letter apologized for the confusion, he also made clear that Fananapazir—not Maron—was the only doctor able to care for the patient. We find that the letter does little to support Maron's position that his colleagues were so driven by dislike for him that actions, which seem on their face to be part of the job, become outside the scope of employment.

Maron's unsubstantiated speculation about the ill will of his colleagues at N.I.H. is not enough, in and of itself, to transform acts which are facially within the scope of employment into acts that fall outside of that scope. *See RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1143 (6th Cir.1996) ("Where, as here, a plaintiff in his complaint pleads conduct within an individual's scope of employment and merely alleges bad or personal motive, summary dismissal of the scope challenge is warranted.").

### III

Maron finally argues that the district court improperly limited his pre-hearing discovery to the scope of employment issue. Specifically, Maron complains that the court prevented him from investigating which parties were responsible for several incidents alleged in his complaint and attributed to "anonymous." The district court ultimately dismissed these counts because Maron could not show who had been responsible.

Those courts that have addressed judicial determination of the scope of employment issue have specified that any evidentiary hearings and discovery necessary to a resolution of the issue must be narrowly circumscribed. *See, e.g., Wilson v. Jones*, 902 F.Supp. 673, 680 (E.D.Va.1995); *Schrob v. Catterson*, 967 F.2d 929, 936 (3d Cir.1992). If initial discovery were not narrowly tailored, plaintiffs would be able to undermine the advantage of substitution intended for defendants by subjecting them to a lengthy and invasive discovery process before the court even had an opportunity to rule that they should be immune from trial.

Maron asserts that he should have been allowed to investigate to find the proper defendants, but he offers no authority to support this claim. Had there been no scope of employment issue necessitating limited discovery, his fatally flawed anonymous counts would certainly have been dismissed for failure to state a claim. The district court was under no legal duty to allow Maron to go on an open-ended fishing expedition in hopes of

finding evidence which links the defendants to several events which, had they in fact occurred as Maron asserted, may have been outside the scope of employment.

### IV

We conclude that the district court properly handled the substitution of the United States for the private defendants charged by Maron. Maron has offered no legal analysis or case law to suggest a contrary conclusion. Therefore the decision of the lower court is

*AFFIRMED.*