**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**No. 18-2024**

BARRY DOE, individually and as Next Friend of his minor children M.D. (2006), E.D. (2008) and K.D. (2009),

        Plaintiff – Appellant,

v.

DAVID J. MERON, individually and in his official capacity as Navy Officer and former Commanding Officer at NSA Bahrain (DOD); BARBARA R. CRAIG, individually and in her official capacity as Director of Armed Forces Center for Child Protection (DOD); KRISTEN E. WEBB, individually and in her official capacity as social worker at Armed Forces Center for Child Protection (DOD); TERRY GREENE, individually and in her official capacity as Principal of Bahrain School (DOD); DAVID LASPISA, individually and in his official capacity as current or former Executive Office, NSA Bahrain (DOD); STEVEN STUTZMAN, individually and in his official capacity as Regional Counseling and Advocacy Coordinator, Navy Installations Command (EURAFSWA); JOHN SCORBY, individually and in his official capacity as a U.S. Navy Rear Admiral and Commander of Navy Installation Command, EURAFSWA; CLARK JACKSON, individually and in his official capacity as current or former Family Advocacy Representative (FAR), NSA Bahrain (DOD); UNITED STATES OF AMERICA,

        Defendants – Appellees.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Paula Xinis, District Judge. (8:17-cv-00812-PX)

Argued: May 8, 2019                        Decided: July 3, 2019

Before KING, DIAZ, and QUATTLEBAUM, Circuit Judges.

Affirmed by published opinion. Judge Quattlebaum wrote the opinion, in which Judge King and Judge Diaz joined.

**ARGUED:** Christopher Edwin Brown, BROWN FIRM, PLLC, Alexandria, Virginia, for Appellant. Daniel Aguilar, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. **ON BRIEF:** T. Roe Frazer II, FRAZER PLC, Nashville, Tennessee; Roy L. Mason, SMOUSE & MASON, LLC, Towson, Maryland; Marie Celeste Bruce, RIFKIN WEINER LIVINGSTON, LLC, Bethesda, Maryland, for Appellant. Joseph H. Hunt, Assistant Attorney General, Mary Hampton Mason, James R. Whitman, Torts Branch, Mark B. Stern, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Robert K. Hur, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellees.

QUATTLEBAUM, Circuit Judge:

Barry Doe claims officers of the United States Navy and employees of the Department of Defense ("DOD") conspired to seize, interrogate and batter his three minor children and to seize and batter him. In response, Doe, individually and on behalf of his three minor children, (collectively "Doe") sued those officers and employees alleging intentional torts under state law and constitutional violations under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

The district court dismissed Doe's claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Regarding Doe's tort claims, the district court determined that the individual defendants were acting within the scope of their employment and were, therefore, immune from suit under the Federal Employees Liability Reform and Tort Compensation Act of 1988 (the "Westfall Act") and the Medical Malpractice Immunity Act (the "Gonzalez Act"). Under those acts, the district court determined that the government was properly substituted for the individual defendants for the tort claims. The district court then held that the government was not subject to suit because the tort claims arose in a foreign country, an exception to the government's limited waiver of sovereign immunity under the Federal Tort Claims Act (the "FTCA").

Regarding the constitutional claims, the district court declined to extend *Bivens* to the circumstances of this case, and, accordingly, dismissed those claims for failure to state a claim. For the reasons set forth below, we affirm.

3

I.

Because of their importance to the background of this case, we first describe the applicable provisions of the Westfall Act, the Gonzalez Act and the FTCA. The Westfall Act immunizes federal employees from personal liability for claims that arise within the scope of their employment. *Maron v. United States*, 126 F.3d 317, 321 (4th Cir. 1997). To provide this immunity, the Attorney General of the United States, or his delegee, must certify that the defendant employees were acting within the scope of their employment at the time of the incident out of which the claim arose. 28 U.S.C. § 2679(d)(1). Following certification, the proceeding is deemed a tort action against the United States under the provisions of the FTCA. 28 U.S.C. § 2679(d)(1).

Similarly, the Gonzalez Act immunizes federal employees in the medical field from personal liability for claims arising from the performance of medical or related health care functions. 10 U.S.C. § 1089(a). It does this by allowing the United States to substitute itself as a defendant upon certification by the Attorney General that the medical employee was acting within the scope of his employment at the time of the incident out of which the suit arose. 10 U.S.C. § 1089(c).

After certification, the ball is in the plaintiff's court. If a plaintiff does not challenge the Attorney General's certification, the certification is conclusive. *Gutierrez de Martinez v. Drug Enforcement Admin.*, 111 F.3d 1148, 1153 (4th Cir. 1997).[1] If a

---

[1] The certification itself satisfies the government's prima facie burden of showing that the defendant employees acted within the scope of their employment but does not (Continued)

4

plaintiff challenges the Attorney General's certification, he must prove that the defendants were not acting within the scope of their employment. *Maron*, 126 F.3d at 323. If the plaintiff presents persuasive evidence refuting certification, the government must provide evidence and analysis supporting its conclusion that the conduct at issue was carried out within the scope of employment. *Id*. If the plaintiff's evidence carries the burden of proof, the district court may allow any discovery it deems appropriate. *Gutierrez de Martinez*, 111 F.3d at 1155.

If the district court determines that the employees were acting within the scope of their employment, the government is substituted as the defendant for the individual employees. Normally, the government would be immune from civil liability for these tort claims under the sovereign immunity doctrine. However, the FTCA is a limited waiver of the government's sovereign immunity for injury or loss caused by the negligent or wrongful act or omission of government employees acting within the scope of their employment. *Medina v. United States*, 259 F.3d 220, 223 (4th Cir. 2001).

The waiver is limited because Congress has provided several exceptions to this waiver under 28 U.S.C. § 2680. Relevant here, Congress excluded from the FTCA waiver of immunity "[a]ny claim arising in a foreign country." 28 U.S.C. § 2680(k). If an exception applies, a court must dismiss a complaint for lack of jurisdiction. *Medina*, 259 F.3d at 223.

---

carry an evidentiary weight unless it details and explains its conclusions. *Maron*, 126 F.3d at 323.

II.

With these legal principles in hand, we turn to the facts and procedural history. In 2017, Doe sued David J. Meron, Barbara R. Craig, Kristen E. Webb, Terry Greene, Clark Jackson, David LaSpisa, Steven Stutzman and Josh Scorby in the District of Maryland. Doe's suit arose from conduct which allegedly occurred at Naval Support Activity Bahrain ("NSA Bahrain"), a United States Navy installation in the Kingdom of Bahrain, in 2015.[2] At the time of the alleged conduct, Doe was employed as a federal civil servant by the Navy at NSA Bahrain. Meron was the Installation Commanding Officer at NSA Bahrain. Craig and Webb were employees of the DOD or the Defense Health Agency ("DHA") in Bethesda, Maryland. Greene was an employee of the Department of Defense Education Activity in Bahrain, serving as the Principal of the Bahrain School. Jackson was an employee of the Navy at NSA Bahrain, serving as a clinical social worker in the DOD's Family Advocacy Program. LaSpisa was a commissioned officer in the Navy at NSA Bahrain, serving as Meron's second-in-command. Stutzman was an employee of the

---

[2] An island nation in the Persian Gulf, the Kingdom of Bahrain's historical roots date back to antiquity. For centuries, various powers, including the Persian Empire, Portugal and the British Empire, have sought to control or influence the island nation in part because of its strategic location and in part because of its rich natural resources. The United States' relationship with Bahrain dates back to the early 20th century. During the Second World War, Bahrain was aligned with the Allied powers, and the United States sent a naval detachment to the region. Since 1948, the United States has maintained a naval command presence in Bahrain. The United States recognized Bahraini independence in 1971, and, in 1991, the United States and Bahrain signed a Defense Cooperation Agreement. Today, Bahrain hosts the Navy's Fifth Fleet and has participated in the military coalition against ISIS.

Navy. Scorby was a Rear Admiral, serving as Commander, Navy Region Europe, Africa, Southwest Asia.

The allegations in Doe's complaint arise from a 2015 investigation at NSA Bahrain into complaints that Doe abused and neglected his three minor children. Jackson reported the allegations to Meron in April 2015. Meron then authorized Craig and Webb to interview and examine Doe's three minor children based on the allegations against Doe. They did so on the same day, interviewing and physically examining the three children. During the interview and examinations, Craig and Webb found no evidence of sexual abuse. [3]

Doe's complaint alleges the investigation was illegitimate. He alleges that Meron, Craig, Webb, Greene, Jackson, LaSpisa and other unnamed individuals in Maryland conceived a plan to seize Doe's minor children without a court order and to interrogate and batter each of them. He further alleges that Scorby was consulted on aspects of the plan and did not prevent it.

According to Doe, this plan was brought to fruition when Doe's three minor children were twice seized, interrogated and battered. Doe alleges that Greene allowed Craig and Webb to seize, detain and interrogate Doe's three minor children at the Bahrain

---

[3] For purposes of reviewing a motion to dismiss for failure to state a claim, all of the factual allegations pled in Doe's complaint must be accepted as true. *Day v. Johns Hopkins Health System Corporation*, 907 F.3d 766, 770 (4th Cir. 2018). Consequently, the majority of the facts in this opinion are derived from Doe's complaint and accepted as true. However, for the limited purpose of the scope of employment analysis under the Westfall Act and Gonzalez Act, this Court must consider and weigh the evidence presented by Doe.

School. He further alleges that LaSpisa forcibly seized the three minor children a second time later the same day. He contends that the children were then taken to another location, where Craig sexually battered all three minor children during the course of their physical examinations. Doe claims that he was also seized, battered, detained and unlawfully imprisoned the following day in the presence of his children.

In the complaint, Doe alleges five constitutional claims under *Bivens*. First, he alleges that the defendants violated the Fourth Amendment rights of his three minor children when LaSpisa allegedly seized the children and Craig and Webb allegedly battered them. Second, Doe alleges the defendants violated the Fourth Amendment rights of his three minor children when Greene, Craig and Webb allegedly seized and interrogated the children at the Bahrain School. Third, he alleges the defendants violated his Fourth Amendment rights when Naval security forces seized, detained, searched and battered him. Fourth, Doe alleges that the defendants violated his and his children's First and Fifth Amendment rights to parentage and familiar relations. Fifth, he alleges that his and his children's Fifth Amendment rights to due process and equal protection were denied as a result of the defendant's conduct and on account of their race.

In addition to his constitutional claims, Doe alleges five intentional tort claims— intentional infliction of emotional distress, assault, battery, false imprisonment and false light invasion of privacy. He also alleges a conspiracy claim under 42 U.S.C. § 1985.

After the complaint was filed, the Acting Director of the Torts Branch of the Civil Division of the United States Department of Justice certified that Scorby, Meron, LaSpisa, Craig, Webb, Jackson, Stutzman and Greene were acting within the scope of

8

employment at the time of these incidents under the Westfall Act. He also certified that Craig was at all relevant times a physician employed by the DOD and was acting within the scope of her employment under the Gonzalez Act.

The government notified the court and Doe of its substitution for the individual defendants with respect to the tort claims. On the same day, the individual defendants and the government moved to dismiss the complaint, or, in the alternative, for summary judgment. Doe moved to set aside the government's scope of employment certification.

The district court denied Doe's motion to set aside and granted the motions to dismiss filed by the government and the individual defendants. In denying Doe's motion, the district court rejected much of Doe's proffered evidence as inadmissible hearsay or as conclusory characterizations about the individual defendants' motives. The district court concluded that Doe did not meet his burden of proving that the defendants acted outside the scope of their employment. The district court thus allowed the substitution of the government for the tort claims.

The district court then granted the government's motion to dismiss. The district court determined that the foreign country exception to the FTCA, which creates an exception to the FTCA for claims arising in a foreign country, required the dismissal of the tort claims for lack of subject matter jurisdiction. Next, the district court declined to

9

extend *Bivens* to Doe's constitutional claims[4] and dismissed those claims for failure to state a claim.[5]

Doe filed a timely notice of appeal on August 29, 2018. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

III.

On appeal, Doe argues that the district court erred in (1) denying his motion to set aside the scope of employment certification, (2) granting the government's motion to dismiss the tort claims and (3) granting the individual defendants' motion to dismiss the constitutional claims. The district court's denial of Doe's motion to set aside the scope of employment certification decision is reviewed de novo. *Gutierrez de Martinez*, 111 F.3d at 1152. Factual findings upon which the legal scope of employment determination rest are reviewed for clear error. *Id*. at 1152 n.3. The district court's grant of a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim is reviewed

---

[4] The government argued that, under the Gonzalez Act, it was substituted for Craig for both the common law and constitutional claims. It also argued because a *Bivens* action under the Constitution cannot ordinarily be brought directly against the government, the constitutional claims against Craig should be dismissed. The district court declined to address the government's argument, instead dismissing the constitutional claims against Craig because the claims improperly extended *Bivens*.

[5] The district court dismissed Doe's conspiracy claim under 42 U.S.C. § 1985, concluding that Doe failed to allege specific incidents of discriminatory animus to support such a claim. In the alternative, the district court held that it would dismiss the conspiracy claim on the grounds of qualified immunity.

de novo. *Sucampo Pharm., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006). We address these arguments in turn.

A.

Doe raises two principal arguments in challenging the district court's determination that the officers and employees were acting within the scope of their employment. First, Doe contends that the district court applied the wrong law. Second, Doe argues that he met his burden of proving that the officers and employees acted outside the scope of their employment.[6]

First considering the applicable law, Doe argues that the district court incorrectly applied District of Columbia law in conducting its scope of employment analysis. Doe contends that the district court should have applied Maryland law because the alleged scheme was initially conceived and orchestrated in Maryland. Doe argues that the application of Maryland law would lead to a different result because Maryland law is materially different from District of Columbia law on the issue of scope of employment. Specifically, Doe notes that Maryland law applies a two-factor test in its scope of employment analysis, while the District of Columbia applies a four-factor test incorporated from the Restatement Second of Agency.

---

[6] Even if he did not meet his burden in challenging certification, Doe argues that he demonstrated a need for additional discovery. A district court's discovery decisions are reviewed for an abuse of discretion. *Gutierrez de Martinez*, 111 F.3d at 1155. Here, the district court did not abuse its discretion in refusing to allow additional discovery and an evidentiary hearing.

11

When conducting a scope of employment analysis under the Westfall Act, courts generally apply the law of the state where the conduct occurred. 28 U.S.C. § 1346(b)(1); *Gutierrez de Martinez*, 111 F.3d at 1156. When the allegedly tortious conduct occurs in a foreign country, rather than apply the law of a foreign country, courts have frequently applied District of Columbia law. *See*, *e.g.*, *Kashin v. Kent*, 457 F.3d 1033, 1037-38 (9th Cir. 2006). Although this Court has yet to address which law applies when allegedly tortious conduct occurs in a foreign country, we hold District of Columbia law applies in these circumstances. Applying District of Columbia law leads to "single, cogent body of law" on the scope of employment issue. *Kashin*, 457 F.3d at 1038. It is also appropriate due to the relationship between the military and the nation's capital. *Id*. at 1037.

However, as the district court pointed out, even if Maryland law were applied, the result would not change. Contrary to Doe's argument, the pertinent law of the District of Columbia and Maryland are materially the same. The District of Columbia, in determining whether an employee's conduct falls within the scope of his employment, examines whether (1) the conduct is of the kind he is employed to perform; (2) the conduct occurs substantially within the authorized time and space limits; (3) the conduct is actuated, at least in part, by a purpose to serve the employer; and (4) if force is intentionally used by the employee against another, the use of force is not unexpectable by the employer. *Allaithi v. Rumsfeld*, 753 F.3d 1327, 1330 (D.C. Cir. 2014). Maryland considers similar factors, including whether (1) the conduct is of the kind the employee is employed to perform; (2) the conduct occurred during a period not unreasonably disconnected from the authorized period of employment in a locality not unreasonably

12

distant from the authorized area; and (3) the conduct was actuated at least in part by a purpose to serve the master. *Sawyer v. Humphries*, 587 A.2d 467, 471 (Md. 1991) (quoting *E. Coast Lines v. M & C.C. of Balto*, 58 A.2d 290, 304 (Md. 1948)). Because the law of the District of Columbia and Maryland are substantially similar on the issues relevant here, we reject Doe's argument that the application of Maryland law to the scope of employment analysis would lead to a different result.

We next turn to Doe's argument he met his burden in challenging certification. In challenging the scope of employment certification, a plaintiff must prove by a preponderance of the evidence that the defendant was acting outside the scope of his employment. *Gutierrez de Martinez*, 111 F.3d at 1153. To meet this burden, a plaintiff must present or forecast specific evidence that contradicts the certification. *Id*. at 1155. More specifically, Doe must, at minimum, present or forecast evidence that shows that the conduct of the officers and employees at issue did not involve the type of work they were employed to perform, occurred outside authorized space and time or was purely personal in nature. *Allaithi*, 753 F.3d at 1330; *Sawyer*, 587 A.2d at 471. To do this, a plaintiff may rely on the pleadings, affidavits or any other supporting documentary evidence. *Gutierrez de Martinez*, 111 F.3d at 1155. He cannot rely on conclusory allegations and speculation. *Id*.

In an attempt to meet his burden, Doe offered three exhibits: (1) a transcript of a conversation between Doe and Regina Waller, who allegedly voiced concerns about Doe's treatment of his children (the "Waller Transcript"); (2) a statement of Valera Young, who allegedly participated in the investigation (the "Young Statement"); and (3)

13

Doe's affidavit.[7] As an initial matter and as the district court correctly pointed out, much of this evidence constitutes inadmissible hearsay. Looking first at the Waller Transcript, the document is an unsworn transcript of an audio recording of a conversation between Doe and Waller. Many statements in the transcript are hearsay and the statements Waller and Doe attribute to others are double hearsay. Likewise, the Young Statement contains hearsay and double hearsay. Finally, Doe's affidavit also contains hearsay purporting to describe the statements of others and conclusory and speculative statements.

Given the questionable admissibility of these documents, these statements arguably should not be considered in reviewing the district court's scope of employment determination. Some courts reviewing challenges to the scope of employment certification have held that the plaintiff's proffered evidence must be admissible to be considered in their scope of employment analysis. *See, e.g.*, *Gilbar v. United States*, 108 F. Supp. 2d 812, 816 (S.D. Ohio 1999), *aff'd*, 229 F.3d 1151 (6th Cir. 2000). Our caselaw also seems to suggest as much without explicitly saying so. *See, e.g.*, *Gutierrez de Martinez*, 111 F.3d at 1153–55. Such an approach makes sense if the scope of employment certification is effectively treated as a motion for summary judgment. *See, e.g.*, *Maron*, 126 F.3d at 322 (affirming the district court's treatment of a certification filing under the Westfall Act as effectively a motion for summary judgment). After all, a

---

[7] Since all three documents are filed under seal, our discussion of the proffered evidence is limited to general descriptions of the statements and allegations therein.

14

party opposing summary judgment must offer evidence that could be presented in a form that would be admissible at trial. Fed. R. Civ. P. 56(c)(2).

But even if we consider all the evidence presented by Doe and credit the hearsay statements, it does not satisfy Doe's burden. Considering Doe's evidence in turn, the Waller Transcript purports to memorialize a conversation between Doe and Waller about the investigation into Doe's alleged conduct. To be sure, the conversation criticizes the investigation. However, it contains no probative evidence that the defendants were acting outside the scope of their employment. The very few statements that relate to a potential personal motive for some of the defendants are speculative and conclusory.

Turning next to the Young Statement, it purports to describe Valera Young's role in the investigation into Doe's alleged conduct. The statement indicates that Young was involved in the investigation and objected to continuing the investigation into Doe. This statement provides some background or context into the origins of the investigation and even some criticism of it, but, like the Waller Transcript, it contains no evidence relevant to the scope of employment analysis.

Considering last Doe's affidavit, the vast majority of it criticizes the investigation, attests to his own fitness as a parent and questions the necessity of the investigation in the first place. This evidence, even if true, does not address the central issue, which is whether the conduct of the defendants was or was not within the scope of their employment.

There are portions of the affidavit that are relevant to the scope of employment analysis. First, Doe alleges that defendants acted tortiously and illegally. But under

15

District of Columbia (and Maryland) law, even intentional torts and illegal conduct may fall within employees' scope of employment. *See Weinberg v. Johnson*, 518 A.2d 985, 988 (D.C. 1986); *Fid. First Home Mortg. Co. v. Williams*, 56 A.3d 501, 515 (Md. Ct. Spec. App. 2012). In considering whether an intentional tort or an illegal act falls within the scope of employment, the inquiry is whether the tort or crime was a foreseeable aspect of the employee's employment. *Weinberg*, 518 A.2d at 990–91; *Williams*, 56 A.3d at 515–16. Here for example, Doe alleges that Craig sexually battered his three minor children in the course of her medical examination of them. Craig's job responsibilities included medical examinations related to alleged sexual abuse. As a result, a physical examination of the children during the course of an investigation into alleged sexual abuse by Doe was a foreseeable consequence of her job. The district court's conclusion on this point is not clear error.

Next, in his affidavit, Doe also alleges that the defendants were motivated by a personal desire for revenge against Doe. Specifically, Doe suggests that the defendants were angered by Doe's involvement in the firing of another employee at NSA Bahrain. However, these allegations lack any evidencing support and are thus speculative.[8] "[U]nsubstantiated speculation about the ill will of his colleagues . . . is not enough, in and of itself, to transform acts which are facially within the scope of employment into acts that fall outside of that scope." *Maron*, 126 F.3d at 327.

_____

[8] To the extent Doe relies on Waller's statements to support this allegation, her own statements in the transcript were also speculative.

16

But even if we credit the speculative and conclusory statements about personal motives in Doe's affidavit and Waller Transcript, they do not satisfy Doe's burden. Under District of Columbia (and Maryland) law, employees' conduct need only be motivated at least in part by a purpose to serve their employer to be within the scope of their employment. *Weinberg*, 518 A.2d at 988; *E. Coast Freight Lines, Inc. v. Mayor and City Council of Baltimore*, 58 A.2d 290, 304 (Md. 1948). To demonstrate that the individual defendants were acting outside the scope of their employment, Doe must be able to show that all the defendants were solely motivated by a personal desire. However, Doe's evidence fails to make this showing. The evidence does not show that this desire could be attributed to all the defendants—much less that it was the sole desire of all the defendants.[9]

In determining that the evidence presented by Doe did not meet his burden in challenging certification, the district court also relied on documents submitted by the individual defendants and the government in support of their motions to dismiss Doe's claims. As described above, the initial burden in challenging certification is on Doe. *Maron*, 126 F.3d at 323. If Doe meets his burden in challenging certification, the government is then required to present evidence to support its conclusion that the torts occurred within the scope of employment. *Id*. Since the district court concluded that Doe did not meet his burden in challenging certification, it need not have considered the

---

[9] With regards to the factual findings of the district court, the district court's conclusion that both Meron and Jackson were at least partially motivated by a purpose to serve their respective roles does not constitute clear error.

17

defendants' evidence. The evidence submitted by the defendants, however, only reinforces the conclusion that the defendants were acting within the scope of their employment, investigating allegations of child abuse or neglect.

For these reasons, we affirm the court's denial of Doe's motion to set aside the scope of employment certification.[10]

B.

Turning next to the district court's order granting the government's motion to dismiss, Doe first contends that because the district court erred in its scope of employment analysis, it should not have reached the subject matter jurisdiction issue. Because we conclude that the government was properly substituted for the defendants, we reject this argument and only consider whether the district court was correct in finding that an exception to the FTCA applies.

As noted above, the FTCA is a limited waiver of the government's sovereign immunity. *Medina*, 259 F.3d at 223. If an exception to the FTCA applies, the government's immunity is not waived and courts lack jurisdiction to hear a case. *Id*. One such exception to the FTCA is the foreign country exception. Section 2680(k) provides that the FTCA does not apply to "[a]ny claim arising in a foreign country." 28 U.S.C.

---

[10] In affirming the district court, we hold that the government was properly substituted for the individual defendants under the Westfall Act. Neither party addressed whether substitution under the Gonzalez Act is appropriate when a medical professional's alleged torts occur abroad. *See Pelphrey v. United States*, 674 F.2d 243, 246 (4th Cir. 1982). However, we need not resolve this issue today since the government substituted itself for all the individual defendants under the Westfall Act. *See United States v. Smith*, 111 S. Ct. 1180 (1991).

§ 2680(k). Courts have routinely held that conduct which occurs on an American military base in a foreign country also falls within this exception. *Heller v. United States*, 776 F.2d 92, 97 (3d Cir. 1985); *Roberts v. United States*, 498 F.2d 520, 522 n.2 (9th Cir. 1974). We agree with this approach and hold that conduct occurring on an American military base in a foreign country falls within the foreign country exception to the FTCA. Accordingly, the district court correctly dismissed these claims because they arose on a foreign military base.

C.

Last, Doe argues that the district court erred in dismissing his constitutional claims because it misapplied *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017).[11] In *Abbasi*, the Supreme Court discussed the continued viability of constitutional claims under *Bivens*. In doing so, it observed that the *Bivens* remedy is now "disfavored" and has not been extended to new contexts for the past 30 years. *Abbasi*, 137 S.Ct. at 1857 (internal quotation marks omitted).

The Court also outlined the two-step framework required to analyze whether a *Bivens* remedy is available against federal officials. A court must first consider whether a case presents a new *Bivens* context. *Id*. at 1859. A context is considered new if it "is different in a meaningful way from previous *Bivens* cases decided by this Court. . . ." *Id*. According to the Supreme Court, a case may differ in a meaningful way:

---

[11] Doe also argues that the district court erred in dismissing his conspiracy claim under 42 U.S.C. § 1985 for failure to state a claim. For the reasons set forth in the district court opinion below, we affirm the district court's dismissal of the conspiracy claim.

because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id*. at 1860. The Supreme Court noted that there have been only three circumstances where the Court has recognized an implied damages remedy under the Constitution since 1971. *Id*. at 1854–55. In 1971, the Court in *Bivens* held that it would "enforce a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures" under the Fourth Amendment. *Id*. at 1854. In 1979, the Court recognized an implied cause of action for damages under the Fifth Amendment Due Process Clause for gender discrimination in *Davis v. Passman*, 442 U.S. 228 (1979). *Id*. at 1854–55. In 1980, the Court recognized an implied cause of action for damages under the Eighth Amendment Cruel and Unusual Punishments Clause for inadequate medical treatment of a prisoner in *Carlson v. Green*, 446 U.S. 14 (1980). *Id*. at 1855.

If the case presents a new context, a court must then conduct a special factors analysis to determine whether an action should proceed. *Id*. at 1857. Although the Court has not defined special factors, it explained "a factor must cause a court to hesitate before answering [whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed] in the affirmative." *Id*. at 1858. Relevant factors include the "impact on governmental operations systemwide," "the burdens on Government employees who are

20

sued personally," the regulatory authority of Congress in a context, and the existence of an "alternative remedial structure" in a case. *Id*. If a case presents a new *Bivens* context and special factors counsel against extending *Bivens* in the circumstances of the case, courts should not recognize a damages action under the Constitution. *Id*. at 1857.

This Court recently interpreted *Abbasi* to preclude the extension of a *Bivens* remedy in the context of a Fourth Amendment claim against Immigration and Customs Enforcement ("ICE") Agents. *Tun-Cos v. Perrotte*, 922 F.3d 514 (4th Cir. 2019). In doing so, we held that the Fourth Amendment claims against the ICE agents presented a new *Bivens* context. *Tun-Cos*, 922 F.3d at 525. We reasoned the statutory and legal mandate under which the officers operated, policy concerns unique to the enforcement of immigration laws, new categories of defendants and the unprecedented constitutional claims in the case all were different from *Bivens*, indicating the proposed claim would be a new context. *Id*. at 524–25. We next determined the impact of immigration on diplomacy, foreign policy, and security; the special role of Congress in setting immigration policy; and the existence of an alternative remedial structure were special factors counseling against an extension of *Bivens*. *Id*. at 526. We thus held that a *Bivens* remedy was not available. *Id*. at 528.

Applying the *Abbasi* framework here, Doe's constitutional claims present a new *Bivens* context because they differ in meaningful ways from previous *Bivens* cases. Beginning with Doe's Fourth Amendment claims, while the plaintiffs in *Bivens* also asserted a Fourth Amendment claim, the other circumstances surrounding the claims differ significantly. Similar to the differences described in *Tun-Cos*, the differences

21

between Doe's claims and the claim recognized in *Bivens* include the rank of the officers and the legal mandate under which the officers were operating. Also in contrast to *Bivens*, these defendants were officers in the United States Navy or employees of the Department of Defense, operating under naval regulations.

Likewise, Doe's Fifth Amendment claims differ significantly from the Fifth Amendment claim recognized by the Supreme Court in *Davis*. In *Davis*, the Court recognized an implied damages remedy under the Fifth Amendment Due Process Clause for gender discrimination where an administrative assistant sued a congressman for firing her because of her gender. 442 U.S. at 244. Unlike those alleged constitutional claims, Doe asserts multiple alleged Fifth Amendment Due Process Clause violations, including violations of his right to parentage, to familial relations and to equal protection of the laws. Additionally, there are meaningful differences between the rank of the officers involved and the legal mandate under which the officers were operating. We therefore find Doe's Fifth Amendment claim also presents a new *Bivens* context.

Like his Fourth Amendment and Fifth Amendment claims, Doe's First Amendment claim also presents a new *Bivens* context. As Doe concedes, his First Amendment claim requires an extension of *Bivens* since it involves a new constitutional right. The Supreme Court has not recognized a *Bivens* remedy for an alleged violation of the First Amendment.

Having determined that all Doe's constitutional claims present new *Bivens* contexts, we now consider whether any special factors counsel against extending a *Bivens* remedy. Multiple special factors counsel against such an extension. First, Doe's claims

22

arose in a military context. As this Court has observed, "Distilling these cases to their core holdings, we restate the principles guiding our analysis in the case at bar: no *Bivens* action will lie where special factors counsel hesitation in creating an implied right of action and special factors clearly counsel hesitation in implying a cause of action for injuries arising out of military service." *Cioca v. Rumsfeld*, 720 F.3d 505, 512 (4th Cir. 2013). Second, Doe's claims would extend *Bivens* extraterritorially. *See*, *e.g.*, *Vance v. Rumsfeld*, 701 F.3d 193, 198–99. (7th Cir. 2012) (en banc) ("This Court has never created or even favorably mentioned a non-statutory right of action for damages on account of conduct that occurred outside the borders of the United States."). Finally, the existence of an alternative remedial scheme, in this case an administrative claim under the Military Claims Act, counsels against extension.

Applying the *Abbasi* framework, we conclude that Doe lacks an implied cause of action under the constitution, and we affirm the district court's dismissal of Doe's constitutional claims.[12]

IV.

For the reasons outlined above, the order of the district court is

*AFFIRMED*.

---

[12] Since we have declined to address whether Craig was properly substituted under the Gonzalez Act, we also decline to reach the novel argument that the Gonzalez Act immunizes defendants from both tort and constitutional claims. We find that the constitutional claims against Craig are also appropriately dismissed under the *Abbasi* framework.